OF THE

# STATE OF NEW YORK.

45    9
60h 575

45b    9
47ap475

45b       9
65 A.D 2 593
65 A.D 4 594

---

## MARY COOPER vs. MELANCTHON BURR and others.

It is essential to a valid gift by parol that there should be an actual or symbolical delivery. The title does not pass unless possession, or the means of obtaining it, are conferred by the donor and accepted by the donee.

The situation, relation and circumstances of the parties, and of the subject of the gift, may be taken into consideration in determining the intent to give, and the fact as to delivery.

A total exclusion of the power or means of resuming possession by the donor is not necessary.

C. who had been confined to her room by illness for nineteen or twenty years, and to her bed for five or six years, prior to her death, kept in her room a bureau and trunks containing gold and silver coin and jewelry. About six weeks before her decease, handing to the plaintiff, who had lived with and taken care of her for twenty-seven years, the keys of the bureau and trunks, she said: "Mary, here are these keys; I give them to you; they are the keys of my trunks and bureau; take them and keep them, and take good care of them; all my property, and every thing, I give to you; you have been a good girl to me, and be so still. * * * You know I have given

it all to you, take whatever you please; it is all yours, but take good care of it." *Held* that the language of the donor, accompanied by a delivery of the keys to the trunks and bureau, evinced the intention of the donor, and placed the donee in possession of the means of assuming absolute control of the contents at her pleasure, and constituted a valid gift of the coin and jewelry in the trunks and bureau.

*Held, also,* that the fact that the trunks and bureau, or their contents, were not removed, or even handled, by the donee, was not a controlling consideration.

Where it appeared from the evidence that the plaintiff, suing as Mary Cooper, was called Mary Flood, during her early infancy, but that she had been called Mary Cooper by C. with whom she lived, and whose name she took, and by all her acquaintances, since about the age of nine or ten years, a period of about twenty years; *Held* that the action was properly brought by the plaintiff by the name of Mary Cooper; that being the name by which she was generally known.

A PPEAL by the defendant from a judgment entered upon the verdict of a jury, and from an order made at a special term, denying a motion for a new trial. The action was brought to recover a quantity of gold and silver coin, jewelry, silver ware, household furniture, &c. which the plaintiff claimed as a gift from one Mary Cooper, deceased, the former owner, and which the defendants' had taken possession of, and detained; claiming the same as the next of kin of the said Mary Cooper, who died intestate. The defendants alleged in their answer that since the commencement of this suit, letters of administration had been issued to two of them, Melancthon Burr and Ann S. Lyons, upon the estate of said Mary Cooper, by the surrogate of New York. The action was tried at the New York circuit, in April, 1863, before Justice HOYT and a jury. The plaintiff was examined as a witness, and testified as follows: That she had lived with deceased from the plaintiff's sixth year of age till the death of the deceased in 1861, a period of twenty-seven years, and that no one else lived with her, except as occasional sub-tenants of parts of the house. That the decedent was confined to her room by illness for nineteen or twenty years prior to her death, and kept her bed for five or six years. During this period no one but the plaintiff took care of the decedent,

except a Mrs. Hart, who nursed her for about three weeks immediately before her death. Through all these twenty-seven years, the plaintiff worked, washed, ironed, cooked, ran errands, nursed her, washed her, dressed her, lifted her into bed, put on her shoes and stockings, and did every thing in the house. The decedent always said she was going to leave her property to the plaintiff. The plaintiff was brought to the decedent by the sister of the decedent, from one of the aslyums, at the age of six years. After the ·sister died, the plaintiff was always called Mary Cooper. The trunks were kept in the decedent's room, and they and the bureaus held the gold, silver and jewelry. Mary Ellen Moore testified: that about six weeks before the decease of the decedent, witness being sent for by the decedent, decedent said in witness's presence to the plaintiff, "Mary, here are these keys; I give them to you; all I have I give to you; they are the keys of my trunks and bureaus; take them and keep them, and take good care of them; all my property and every thing I give to you; you have been a good girl to me, and be so still.  *  *  * Don't cry, Mary, you can go to market now."  *  *  *  Mary asked her how much money she should take (to market,) and she said, "You know I have given it all to you, take whatever you please; it is all yours, but take good care of it." As the witness was leaving, the decedent threw up her hands and said, "All is yours, Mary, I have given it all to you."  *  *  *  "You have been a good girl to me, Mary, and be so still."  *  *  *  She handed Mary (the plaintiff) the keys, and the plaintiff took them at the time. That about two years before the death of the decedent, witness was in to see the plaintiff, who was talking to witness and crying, and the decedent's door being open, she heard her crying and said, "Mary, dear, what are you crying for?" Mary said, "Nothing;" and she said "Don't cry; don't worry any more; when I am gone I will give every thing to you and you shan't work any more, and you shall be well cared for." As to going to market—she told Mary to get what she

wanted, for it was all hers to do as she pleased with. Catharine Hart testified, that she was nurse to decedent for three weeks before her death. Deceased sent for witness, said she had been taken very ill and would not have anybody to nurse her but witness. She was very low indeed; she said, "I am going to die, and I want you to be my nurse; and Mary, being a good, faithful girl to me, I have given her every thing in this house—all that I have got in this house; Mary has earned it, for she has been a good, faithful girl to me; she nursed me day and night, and I had no friends but that girl;" and she called her "my dear child," and she said, "Mary, you shall never be called by any other name than Mary Cooper as long as you live, and you all hear that that is that girl's name." Abby Jane Matthewson testified, that she lived in the house of the deceased three years. Became intimately acquainted with the deceased and with the plaintiff. Was in deceased's room twice a day or oftener. She has always said that every thing belonged to the plaintiff—"every thing she had, including money, furniture and every thing, belonged to Mary, her little girl." Deceased said she had brought her up, and for a great many years she had taken the best care of her, and she wished that every thing that belonged to her should be plaintiff's; "it was Mary's and nobody else's."

The evidence being closed, the counsel for the defendants moved to dismiss the complaint on the ground that there must be an actual delivery, so far as the subject is capable of delivery, to make a valid gift; that the donor must part not only with the possession but with the dominion of the property. That the mere circumstance of the delivery of the keys to the trunks, where the trunks themselves and contents were capable of delivery, and where the trunks themselves and contents remained in possession of the donor, until her death, is not sufficient to make a valid gift. The court denied the motion, and defendants' counsel duly excepted. The court then said, "On that subject I shall

Cooper *v.* Burr.

charge the jury, that if they shall be satisfied that the matter occurred in the manner testified to by Miss Moore, and with the design and intent to pass the property to the plaintiff, it would be a good gift, notwithstanding the continuation of their living together in the manner they did." The defendants excepted to this ruling.

The defendants' counsel requested the court to charge the jury, that if the jury should be satisfied that here was such a gift, as under the charge of the court would be valid, they were not in this case to go beyond nominal damages, because the title to this property passed to the representatives, and upon their taking out letters of administration, their title related back to the intestate. The court said, "That involves the other question, whether the property was the property of the plaintiff. That question can not be involved in this case at all." The defendants' counsel excepted to this ruling.

The counsel for the plaintiff requested the court to charge that there was no evidence to prove insanity. The court declined so to charge, and the plaintiff's counsel excepted.

The counsel for the plaintiff requested the court to charge the jury, that if they found that the property in question had been given to the plaintiff in such a way as under the directions of the court would be a valid gift, then they should allow the plaintiff the full market value of the gold and silver. The court declined so to charge, and held that the plaintiff could only recover the value of the coin as placed upon it by law—that it had no other value. To which ruling and refusal to charge, the plaintiff's counsel duly excepted.

The court then charged the jury as follows: "The plaintiff in this case has in form brought her action to recover the specific property described in the complaint, but as some of the articles have not been taken from her possession, and as the articles are very numerous and of different values, by consent of the counsel it is agreed, that your verdict, if you shall find for the plaintiff, shall be a verdict for the value,

and not for the specific property. That will leave the rights of the parties without any material injury, as well as if you found for the specific property. I have ruled that the plaintiff is not entitled to recover the enhanced market value of the gold and silver coin, but they have the benefit of the exception. I have ruled that when the parties come into a court of law to recover coin, they can only recover what the standard value is, according to law. In this question I may be wrong — very possibly I am, but you are to regard that as the law of this case.

The first question you are called to consider and determine is, whose property this was, at the time it was taken by the defendants. Was it the property of Mary Cooper, the plaintiff, or was it the property of the deceased, Miss Cooper, at the time af her death? If it was the property of Miss Cooper at the time of her death, then it went to her representatives, and although the defendants here were not then her representatives, yet they subsequently became such, and as such the title to the property relates back to the time of her death, and hence no recovery could be had, or only a nominal one could be had, if you should find it was the property of Miss Cooper at the time of her death. But if she gave the property, or the title to the property, to the plaintiff before her death, under such forms, and such ceremonies as that the law will adjudicate the title to the property passed, and you shall find it passed, under the evidence in the case, then the plaintiff would be entitled to recover, because then it was no longer Miss Cooper's property, and no title passed to the defendants, and the plaintiff would be entitled to recover the value of the property, with interest upon that value from the time it was taken, down to the present time.

For the purpose of making title to this property, the plaintiff claims it was given to her by Miss Cooper before her death. She gives evidence to show that she was taken by a sister of Miss Cooper, from an asylum when she was about

six years old, and that that sister died when she was eight or nine years old, and from that time she continued in the family of this Miss Cooper and her father, who was then living, for some few years longer, when he died, in 1838 or 1839, and from that time forward she continued to live with this Miss Cooper, the deceased, and for the last eighteen or twenty years the deceased was in infirm health, and for the last seventeen or eighteen years she has not been known to leave the house, and for a considerable length of time not even her room. From this testimony, and all the witnesses concur in this, it appears that the plaintiff lived there with her all this time, and was the only person in the house, with the exception of a short time prior to Miss Cooper's death, when Mrs. Hart went there as nurse, and when, occasionally, some of the neighbors were called in to assist, when she was more unwell than usual.

The plaintiff claims that Miss Cooper had frequently expressed her desire and intention to give to Mary, this plaintiff, her property before she died, and that before she died she did give it to her. As to the evidence on that point, the first important witness is Miss Moore. Miss Moore testified that about six weeks before the old lady's death, she desired to see Mrs. Moore, the mother of the witness, and the plaintiff went after her, but she found Mrs. Moore was out, and her husband asked if the daughter would not answer, and she said she would perhaps, and so the daughter accompanied her to the house. Now it will be remembered that Miss Cooper, the plaintiff here, or Miss Flood, as they call her, (what her name was is entirely an immaterial question,) was not permitted to testify in this case as to what occurred between her and Miss Cooper, the deceased, in reference to this matter, because Miss Cooper is dead, and can not be here to testify against her, and consequently the law, although it has allowed parties to be witnesses in their own case, has not gone to the extent that where the parties on one side are representatives of a deceased person, the other party can, as

to conversations with the deceased, or transactions that existed between them, before the decease, be a witness, for the reason that the deceased can not be called upon the stand to tell her own story. Miss Moore, however, testifies to the same thing, substantially, as the plaintiff, about Miss Cooper's calling for her mother, and she being out, she, Miss Moore, went in her place, and that upon her entering the room where deceased was, the plaintiff said something in reference to her coming, and deceased said, "I know you are a friend of Mary's," or some such expression, and then she took a bunch of keys and gave them to Mary, and said, "I give you these keys and all there is here—all I have, money and all." That is about the substance of it; and that Mary said something about going to market before that, and then the old lady said, "Now you may go to market," and as they were about going out she made a further expression, confirmatory of what had been done, and what she had said before, and that Mary took the keys. Now upon this subject, if this witness has testified correctly as to what occurred, and the deceased Mary Cooper did on that occasion deliver over to the plaintiff the keys to her trunks where her money was mostly kept and to the bureau, and did then tell her, or in effect, that she then gave her all the property she had, and the plaintiff took the keys, and it was designed and intended on the part of Miss Cooper to invest her with the title to the property, then what was done as described by Miss Moore, would amount, I think, in law, to a valid gift, provided she is not mistaken in what occurred, and provided she has not testified untruly. The plaintiff gives other testimony tending to show acts confirmatory of this; that is, the expressions of this deceased person as to her design and intention; and on that subject she calls, in the first place, Miss Mathewson, who had lived in the house some three years, and had left about eight months before this time, and she testifies that she had heard the old lady say that Mary had been a faithful girl, and she was going to leave all her property to her at her death; that

would not amount to a gift. An expression of what she was going to do, would not amount to a gift. But this evidence is offered here, and permitted to be given, merely for the purpose of showing that she had a design to effectuate the purpose before she died, and to strengthen the evidence of Miss Moore, to some extent, as to the fact of the actual gift having been made. Then Mrs. Hart is called, who speaks of some conversations she had with the deceased, of being present on one occasion when something was said about Mary having the keys, and every thing being hers. At all events, she corroborates this idea, that either after or before it was claimed this gift was made, she said she was going to do it, and I think, on one occasion, she said she had given her all. This is substantially all the evidence of the gift on the part of the plaintiff, with the exception that Mr. Moore, who was called to detail some conversation which occurred between him and the plaintiff, after the death of the old lady, in which it is claimed she made some admissions or statement inconsistent with the idea that the property was hers. Upon cross-examination, he said that at one of these conversations, the plaintiff said that all the property had been given to her, and that Dr. Linsley had threatened her, or made some remark that if she destroyed any of it, she would be sent to state prison. Then on the part of the defendants, they call several witnesses for the purpose of showing that the statement of Miss Moore, and this claim of the plaintiff, that there has been an actual delivery and gift of this property to the plaintiff, is inconsistent with certain statements she subsequently made, about the time or after the death of the old lady. I should have said, however, that the plaintiff testifies that during the time they were attending the funeral of this old lady, or between the time of the death and burial, this Mrs. Lyons, who, it seems, was the neice of this old lady, asked her for the keys for some purpose, to get some linen necessary to be used, and she gave them to her, and she kept the keys afterwards, and rather

pushed her out of the door, and locked the door upon her—the door of the room in which was the mass of this property, the gold and silver.   The plaintiff says, also, that before they took this property away, she told them it was hers, that it had been given to her by the old lady before she died.

Dr. Linsley is called on the part of the defendants, and he says that some eight or ten days before the death of the old lady, which was a later time than when Miss Moore testifies this property was given to the plaintiff, he told Mary he did not think the old lady would get well, and she says, what will become of me, and he told her they would take care of her, or do something for her; and after her death, I think he said that the plaintiff said Miss Cooper had told her to help herself from the trunks under the bed, and he said don't do so, that if you do you will be guilty of theft.   Then Mr. Taylor is called, and he testifies that he had a conversation with the plaintiff after the death of Miss Cooper, with reference to her situation, and he says she said she was bad off and had nothing.   Now gentlemen you are to look at these conversations had with the plaintiff, and see whether they are stated accurately—see what was said and done, and give them such force and effect as in your judgment they are entitled to, and consider this question whether Miss Moore has testified correctly as to this statement, and this scene which she describes when she was there.   You will look at this evidence.

It is in evidence that this property had been taken away from the possession of the plaintiff, and was in the possession of these defendants, and you are to look at these statements, and see whether they have relation to her then apparent condition; whether that is what she meant by it; whether that is a fair inference, or whether she meant to say that nothing had been given to her.   It is with this view this evidence has been received, with a claim on one side that it is inconsistent, and on the other side that it is not necessarily inconsistent with the idea of this property hav-

Cooper *v.* Burr.

ing been given to her, and taken away by these parties and in their possession; and whether she would be able to claim it or not, and was trying to arrange to get some compensation, or some portion of it for her benefit. 'You are to look at these statements carefully, and see what they meant, and see whether they are entitled to be taken as admissions that she had no interest in this property, or whether they have reference to the matter as it then stood, that she was left without any thing. Then Mrs. Burr is called; and there is another fact which I should call your attention to, which is, that Mr. Burr, Mrs. Burr, and Mrs. Lyons, are the parties defendants here, as Miss Cooper is the party plaintiff; they are each of them interested in the question of recovery; the plaintiff is deeply interested in obtaining a recovery, and the defendants are equally interested in defeating a recovery. Formerly until within a few years, neither of these parties could have come upon the stand, and been witnesses in their own behalf; no witnesses could have been examined who were in any way interested, but the legislature has seen fit to permit parties interested to be examined, and even permitted parties to be witnesses in their own behalf, leaving it to the jury to determine and discriminate. It is no doubt true that this law has a tendency to, and doubtless does, cause the commission of a great deal of perjury, because the interest of witnesses is very likely to prejudice and sway their minds and judgment. It is equally true that a jury upon seeing persons on the stand and hearing their testimony in the case, are able to discriminate and arrive at as correct a conclusion as though these witnesses had not been upon the stand, and perhaps more so; because, after hearing their own story, and hearing the other evidence, it is for the jury to say how much weight is to be given to their testimony. Mrs. Burr testifies, in relation to these keys, that they were voluntarily given up, and that Mary had them on one or two occasions, and gave them back. Mary's version is different from that. Mrs. Lyons testifies to the same thing upon the subject of these keys —

both of these witnesses differing from Mary, and they are all interested in this case.

It is not, perhaps, material to the case whether the plaintiff at that time kept the keys or delivered them to Mrs. Lyons. It would not settle the question of the right to the property, one way or the other; but it may have an influence as indicating whether or not she then understood that the property was hers or not.

Then you are to take into consideration the condition of things at this time. Here was this old lady, who had been in some degree standing in the relation of mother to this plaintiff, and she as daughter to her, as claimed on the part of the plaintiff; but the old lady was dead in the house, and it was a time of affliction, and it was perhaps not a proper time for settling the right of property which had been left to her. We should not ordinarily expect that at such a time the subject of a division of the property, or who was to have it, would have been the first idea in the minds of the several parties. Hence we are to look at what may have occurred on this occasion, with a little more bearing of favor either as to one or the other, than we should look at it in calmer moments. Now Mrs. Burr testifies, and so do Mrs. Lyons and Miss Eliza Lyons, substantially the same, that the next day after the funeral, when they were taking away this property, Mary pointed out certain articles as hers, which she had purchased; but they say she did not make any claim to this other property as being hers. You have heard this testimony, and you have heard the testimony of the plaintiff, and the testimony of Mrs. Hart. She testifies she told them the property had been given to Mary, and it was hers.

If you come to the conclusion that a gift had been made, a valid gift such as the law will recognize; that she had the property and controlled it as her own, even though the old lady resided in the house with her, and although she may have had the keys subsequent to that, it would not change the title. If any thing was done to change the title,

then it could not be passed back, unless a similar transaction had taken place; and if you determine the title was given and nothing done to change it back, then the plaintiff will be entitled to recover, unless it should be defeated by reason of a want of capacity in this woman to accomplish such a purpose.

If you come to the conclusion that this gift did not take place, then this will be sufficient, and you will not inquire into the other question. But if you are satisfied it did take place, then you have another inquiry to make, and that is, whether at the time this gift was made, the old lady had the capacity to make such a gift. Upon that subject, gentlemen, the law has been, that a person having the least capacity, was competent to make a will and transfer property, but that is not the law as I understand it now. The courts have come to the conclusion, since the Lispenard case went a little too far, that a person might not have capacity to dispose of property, and yet have some capacity. Upon that subject I think the rule should be this : that a person to have capacity to dispose of property by will or by gift, or by sale, must have capacity enough, especially if it is by will or gift, to comprehend and understand something about the claims of the persons upon them by relationship or otherwise, and to appreciate and understand something about the extent and amount of the property they are disposing of, and if they have a reasonable capacity for that purpose, then they are competent either to make a will or a gift, or to transfer property. But if they are wanting in that, and have not a reasonable capacity for such a purpose, then they have not capacity enough to do these things.

Dr. Linsley testifies that he has been the family physician of the old lady for twenty-five years, and that in his judgment she was a crazy woman. And, as I understand, that she has been so all this time. He is a physician, gentlemen, and they are permitted to speak upon this question. Whether they speak intelligently, or whether they speak accurately, or

whether they speak from facts, which the jury are satisfied are correct or not, are questions for the jury to determine, and not for me.   And then upon his cross-examination he is called upon to specify wherein she was crazy, and what he had seen, and he says, on being questioned pretty closely, that he thinks her insanity was a moral insanity, and that it related principally to the recollection or mis-recollection of persons—and he gives instances of that.   On one occasion he went there, and he had been there a few days before, and the old lady said that Dr. Baldwin had been there, when, in fact, Dr. Baldwin was dead.   That is one instance he produces tending to show to his mind that she was crazy.   Then he says she would begin to converse on a subject and get off on another; that she was incoherent, and used extravagant expressions.   He also cites identity of persons as a subject on which she was not in her right mind.   She would imagine herself to be the Deity, and that persons were attempting to poison her.   These are the things he testifies to as showing she was not in her right mind.   You have heard his cross-examination, and it is for you to say with what degree of accuracy he speaks, or with what want of accuracy he speaks, with reference to the matter, and whether he testified candidly or not.

Mrs. Burr and Mrs. Lyons also testify that they have long considered her an insane person, and Mr. Burr also, giving instances of what she has said and done from which they have formed such opinion of her.   One is, that on some occasions she imagined herself to belong to the royal family; as, for example, that she was sister to the Queen of Scots, and on another occasion to the royal family of France, and that on some occasions she would say three, three, three, when she would refer to some imaginary thing that had taken place.   Mr. Burr also testifies to some facts as reasons why, in his judgment, she was insane.   You must judge how far they had opportunities to judge.   On the other hand, Miss

Cooper *v.* Burr.

Moore, Mrs. Mathewson, and Mrs. Hart, have testified that they never saw any thing but that she was in her right mind.

Certain other points are produced, which it is proper for the jury to take into consideration upon this question of sanity or insanity—as to her ability to do business. It appears she drew an annuity which was paid quarterly, and she lived in a house which belonged to the estate, or to Mr. Burr, it is immaterial which, and on that a rent of $300 was allowed and deducted from this annuity, which otherwise would be $250 per quarter, and Mr. Burr himself, or his wife, or Mrs. Lyons, or a sister, who is now dead, would go there with the money, and pay it over to the old lady or this girl, and take a receipt for the money; and he produced a large number of receipts which were taken by him during the several times; and sometimes the receipts would not be prepared, and she would say to the girl, or the girl would say, she would send it over, and it would be sent. Among these receipts, there are five produced, which it is claimed by the defendants are somewhat incoherently expressed, and have in them allusions not pertinent to the matter, and some inaccuracies in the receipts are referred to. You have seen them, and heard them read, and I need not call your attention further to that point. Doubtless there is in these receipts something tending to show, that at the time they were written, this woman was either not in her right mind, or else had some other object in view—what I can not say, unless there was some feeling existing between her and Mr. Burr. The receipts are not such as a person in ordinary business would give. The other receipts produced, however, all of them, perhaps substantially, contain what was requisite for a receipt for the money, although, perhaps, there was some little informality in the manner of deducting the $75, and making up the $250; and it is claimed by the plaintiff that the production of so large a number of receipts, all drawn by her, and all written in a legible hand, and in an apparent

business-like manner, shows that she had capacity to transact business and to control property.

You are to determine, gentlemen, from all the circumstances, whether at the time this gift is claimed to have been made, this old lady had sufficient capacity to understand the claim of others upon her bounty, and sufficient to understand the nature and character of the property she was disposing of, so as to be able either to make a will, or to dispose of it by gift, within the rules I have laid down. If she was in that condition, she was in a condition to do it, and had a right to do it; and no person whether next of kin or not, had any right to say she should not do it. Still, when a party gives property to a stranger, and that stranger has control up to a certain time, of the party making the gift, it may be looked upon with more suspicion than when it is given to near relatives, because, under ordinary circumstances, when persons are about to die, they give away their property to relatives.

Still you are to look at the circumstances and the relation this girl bore to this woman for so long a time, and the care and custody she had taken of the old lady, and also to look at the question whether these relatives had shown that affection and care for her wants, which would be likely to impress upon her mind a disposition that they should have this property after her death, rather than the person who had been in her family.

If you should come to the conclusion that this old lady did give this property, so as to make a valid gift, to this plaintiff, then the plaintiff will be entitled to recover; if not, then the defendants will be entitled to recover.

If you should find that the plaintiff is entitled to recover under the rule I have laid down, the value of the property which you will find is $10,718.41, and the interest is $1227.11, making a total amount of $11,945,52. If the plaintiff is not entitled recover, then you will render a verdict for the defendants.

Cooper *v.* Burr.

If the matters did take place substantially as Miss Moore has testified to, if you are satisfied of that, although the plaintiff did not assert her rights when attention was called to it afterwards, it would not deprive her of her right to recover.

I am requested to say something to you on the subject of this name. The defendants interpose an objection that this plaintiff can not recover, because they say her name is Mary Flood. That does not make any difference. If the plaintiff has been known to the community, and passed by the name of Mary Cooper as much or more than by the name of Mary Flood, it would be no objection to her recovery under this name."

The counsel for the defendants duly excepted to so much of the charge of the court as decided that if the jury were satisfied that the gift to the plaintiff was made substantially as testified to by Miss Moore, and with the intention on the part of the deceased to pass to her the title to the property, such gift would be valid, and vest in the plaintiff the title to such property. Also, that the plaintiff can recover under the name of Mary Cooper, if she is or was known as well as or better by that name than by the name of Mary Flood.

The jury, after deliberation, rendered a verdict for the plaintiff for $11,945.52.

Whereupon, on motion of the defendants' counsel, the court gave the defendants twenty days' time to make and serve a case and exceptions, or bill of exceptions, allowing the plaintiff to enter judgment on the verdict by way of security, without prejudice to the right of the defendants to move for a new trial on a case made and settled.

*L. B. Woodruff* and *John A. Mapes,* for the appellants. I. The misnomer of the plaintiff was set up in the answer. It was good ground of a plea in abatement, and should have been allowed. (1 *Lillie's Ent.* 4. 1 *Mod. Ent.* 12. 3 *Chit. Pl.* (*7th ed.*) 903 *and notes; Precedents. Smith* v. *Bow-*

ker, 1 *Mass. R.* 79. *Willard* v. *Missani,* 1 *Cowen,* 37. *Mayor, &c. of Stafford* v. *Bolton,* 1 *Bos. & Pul.* 40. *Clerk, &c. of Taunton Market* v. *Kimberly,* 2 *Wm. Black. R.* 1120. *Gardner* v. *Walker,* 3 *Anst.* 935.) Matter of abatement may be joined with defense on the merits. (*Bridge* v. *Payson,* 5 *Sandf.* 210. *Mayhew* v. *Robinson,* 10 *How.* 162. *Sweet* v. *Tuttle, Id.* 40; *affirmed* 14 *N. Y. Rep.* 465.) The exception to the charge on the subject of misnomer was well taken, viz: That "if the plaintiff has been known to the community and passed by the name of Mary Cooper, as much or more than Mary Flood, it would be no objection to her recovery under this name." This doctrine is applicable to a plea of misnomer of the defendant — and the reason is that a plaintiff can not know that a defendant has any other name than that by which he is commonly known. That reason has no application to the plaintiff; he knows his own name. (*Le Blanc arg.* 1 *Bos. & Pul.* 43.)

II. The complaint should have been dismissed on the further ground that no valid gift to the plaintiff was proved. The ruling of the justice at the trial was erroneous, and the judgment should be reversed for that reason. This ruling was, "if the jury are satisfied that the matter occurred in the manner testified to by Miss Moore, and with the design and intent to pass the property to the plaintiff, it would be a good gift, notwithstanding the continuation of their living together in the manner they did." "If this witness (Miss Moore) has testified correctly as to what occurred, and the deceased Mary Cooper did on that occasion deliver over to the plaintiff the keys to her trunks where her money was mostly kept, and to the bureau, and did then tell her, or in effect, that she then gave her all the property she had, and the plaintiff took the keys, and it was designed and intended on the part of Miss Cooper to invest her with the title to the property, then what was done, as described by Miss Moore, would amount I think, in law, to a valid gift, provided she is not mistaken in what occurred, and provided

Cooper *v.* Burr.

she has not testified untruly." 1. To constitute a valid gift, there must be an actual delivery. This is the *rule*, and what is called constructive delivery is allowed only when the circumstances are" such as to render an *exception* necessary. 2. Such constructive delivery is only sufficient when the subject of the gift is of such a character, or is in such a condition, that manual or actual delivery is impracticable. The delivery "must be an actual delivery, so far as the subject is capable of delivery." (2 *Kent's Com.* 439, 6*th and subse-*, *quent ed.*) It is only where the thing is not capable of actual delivery, that there may be an act which the law may deem equivalent. (*Id.*) And the donor must *part not only* with the possession, but with the dominion of the property. (*Id. Hunter* v. *Hunter,* 19 *Barb.* 635. *Huntington* v. *Gilmore,* 14 *id.* 243, *where the cases are collected.*) In *Woodruff* v. *Cook,* (25 *Barb.* 512,) the court, after adverting to the fact that there was not even a symbolical delivery, (the subject of the gift being a mare,) say "she was on the farm where both parties resided at the time of the alleged gift, and in *such case* Kent says, without an *actual delivery* the title does not pass ; and all the authorities so hold." *Allen* v. *Cowen,* (28 *Barb.* 99, 102,) is to the like effect, and that "a symbolical delivery will answer where the articles are ponderous and incapable of being handed from one to the other." 3. The rules on this subject apply alike to gifts *inter vivos,* and to a *donatio mortis causa.* (*Cases above referred to, and Kenney* v. *Pub. Ad.* 2 *Bradf.* 321. *Bloomer* v. *Bloomer, Id.* 346. 4. The above cases also establish that the *intent to give,* however clear, will not avail. Also, that such delivery is equally essential in .equity as at law. A court of equity never enforces a gift. (*Bryson* v. *B rownrigg,* 9 *Ves.* 1.) In *Allen* v. *Cowen,* (28 *Barb.* 99,) above cited, the act of the donor was singularly like that alleged in this case ; the donor pointed out the furniture in question, standing in the very room where it was, and said, "I give you this property, and all I have purchased to day." The delivery of a key.

can not therefore operate, the trunks being present, in the possession of the donor, and continuing in such possession. 5. No change of possession either of the trunks or keys is proven. On Sunday the week before her death, and after the pretended gift to the plaintiff, Miss Cooper had the keys in her possession. 6. The proofs in this case failed to show such a delivery as is requisite to a valid gift. If it be deemed that what this witness, Miss Moore, testified, if true, showed an *intent* to give, that is all that can be claimed for it. The *gift* was not consummated. The subject is elaborately considered in the opinion of Daly (1st Judge Com. Pl. acting as surrogate,) in *re. the estate of Miller*, (*See Delmotte* v. *Taylor*, 1 *Redfield*, 417, or 6 *N. Y. Sur. Rep.*)

III. As a question of fact, the weight of evidence is strongly against the story of the pretended gift. 1. The plaintiff herself stated after the funeral, in the presence of two witnesses, that she had asked the deceased to give her something, and that she would not give her a thing. The plaintiff, though recalled to the witness stand after this testimony was given, did not deny it. 2. The plaintiff's conduct after the death occurred, was wholly inconsistent with the theory of the gift. She gave up the keys to the relatives, without making any claim to them. She made no claim whatever to the property as hers, except to specific articles, all of which, with much more, were given her. She only claimed that the relatives should do something for her in consideration of her long services. This they were willing to do, though they did not agree on the amount. Against all this evidence to the contrary, the plaintiff pretends that she told them of the gift. Her testimony is unworthy of belief, in view of the fact that she deliberately swore that none of the relatives ever came to the house at all. This was proved to be untrue from the testimony of her own as well as of the defendants' witnesses. 3. The conduct and language of Miss Cooper, the deceased, after the time of the pretended gift, is inconsistent with the theory of the gift.

Cooper *v.* Burr.

About ten days before she died, she, being then in possession of the keys, pointed out the trunk to Mrs. Burr, and said, "*My* gold is in that trunk." Three or four days before she died, Mr. Moore was called in, and the old lady said to those round her, "Go away from here, you are coming here to rob *me*," the plaintiff and Mrs. Hart being present. 4. When the gold could not be found after the funeral, the plaintiff being called, expressed the opinion that the deceased had taken it out during her sickness, and placed it elsewhere. This could not have been done unless the deceased had the *dominion* of the property. 5. It is perfectly evident form the foregoing facts and circumstances, that if any such occurrences as those related by Miss Moore, did take place, they were but the unmeaning expressions of insanity, and so regarded by the plaintiff at the time; no change was made in the dominion of the property, and no importance attached to the gift, until long after the death of Miss Cooper, and after the plaintiff had enjoyed the assistance of ingenious advisers.

IV. The evidence shows by the most satisfactory preponderance, that the alleged donor, Miss Cooper, was insane, and the verdict should be set aside as against evidence, on that ground. 1. The physician who had attended her for twenty-five years, states unqualifiedly, that she was insane. He relates at some length her extravagant and insane expressions; at one time calling him Dr. Baldwin, who had been dead twenty years. At another stating that she was the Almighty. She thought somebody wanted to poison her. 2. She was also in the habit of claiming that she was the sister of Mary, Queen of Scots, and of denying that she was the daughter of William Cooper. Sometime she would say she belonged to the royal family of France, and was in the constant habit of using an unmeaning expression, "there were three," &c. 3. The receipts given by her for quarterly payments of the annuity are wholly irreconcilable with the theory of her sanity. 4. But three or four days before her death, when Mr. Moore was called in, she was raving, calling out to the

plaintiff and those around her, "Go away, you damned bloody murderers; you are coming here to rob me." 5. She had been in the insane asylum during her father's lifetime. 6. The fact that living alone as she did, she should for years hoard up coin to the extent of many thousand dollars, keeping it in her own room, risking her own life, and deriving no benefit or interest from it, is of itself almost if not quite conclusive evidence of her insanity. 7. It is insisted that no intelligent and unprejudiced person can read the evidence without being compelled to the conclusion that she was insane. 8. The language of the justice in his charge on that subject, was calculated to mislead the jury, and tended thereby to a verdict against the evidence. (*Clark* v. *Fisher,* 1 *Paige,* 171, and other cases cited in the recent case of *Delafield* v. *Parish,* 25 *N. Y. Rep.* 9, 23, *&c.*) 9. It is a familiar rule that the court will look with distrust upon testamentary dispositions, or gifts contemplating the death of the donor, disinheriting the next of kin and heirs at law, and devising or giving the whole of the property to strangers. This rule applies with especial force to cases where the property is claimed to have been devised or given to one who has had the sole control, or nearly the sole control, of the donor. (*Clarke* v. *Sawyer,* 2 *Comst.* 498.) This suspicion should be greater, and the court ought not to be satisfied without the most clear and convincing evidence, when the donor is of even questionable capacity to manage her own affairs with discretion. 10. The court ought not to be satisfied with the verdict on this question of insanity, and the ends of justice demand that a new trial should be granted.

V. The defendants should have been permitted to show why (being her only relatives) they had not caused the deceased to be provided for in some asylum for the insane, instead of suffering her to lead an irrational, solitary life in a house rented for the purpose. The conduct of the defendants in this respect was pertinent, and was relied upon as tending to show that they did not themselves believe she was

Cooper *v.* Burr.

insane, nor treat her as an insane person. The directions of her father, Wm. Cooper, though not evidence of the fact of insanity, were admissable for the purpose of such explanation of the subsequent treatment of the deceased by her relatives ; and so to destroy the inference that the defendants themselves did not regard her as insane.

*Wm. Fullerton* and *Stuart & Burling*, for the respondent. I. It was proper for the plaintiff, who claimed the property in virtue of a *gift* from Mary Cooper, deceased, to show that the decedent had expressed an intention to give her the property in her lifetime. When the question was put which was objected to, it had not been shown in the case that the defendants were the legal representatives of Mary Cooper, deceased. The objection, therefore, was not well taken, under section 399 of the code.

II. The motion to dismiss the complaint was properly denied. 1. The gift of the property in question was valid, and passed the title to the donee. The rule as to gifts is, " the thing must be put in the hands of the donee, *or placed within his power by delivery of the means of obtaining it.*" (*Harris* v. *Clark*, 3 *Comst.* 93. *Hunter* v. *Hunter*, 19 *Barb.* 635. *Allen* v. *Cowen*, 28 *id.* 101. *Parish* v. *Stone*, 14 *Pick.* 206.) The delivery of the keys was a good delivery of the property. (*Chapin* v. *Rogers*, 1 *East*, 194. *Allen* v. *Cowen*, 28 *Barb.* 101. *Smith* v. *Smith*, 1 *Strange*, 955. *Jones* v. *Selby*, *Prec. in Chan.* 300.) The donor in the case of *Jones* v. *Selby* had given his wife a hair trunk and handed her the key, in which, after his death, was found an exchequer talley for £500. It is said by Lord Hardwicke, that this amounted to the same thing as delivery of possession of the talley. The keys were accepted and retained by the donee until the death of the donor. This was a good acceptance of the gift. The delivery of the key was a good symbolical delivery. (*Noble* v. *Smith*, 2 *John.* 55.) In this case, Kent, Ch. J. says : "The cases in which the delivery of

a symbol has been held sufficient to perfect the gift were those in which it was considered as equivalent to actual delivery, *as the delivery of a key of a trunk, of a room or warehouse, which was the true and effectual way of obtaining the use and command of the subject."* (2 *Vesey*, 442–3. 4 *Brown*, 286. *Toller's Law of Ex.* 181, 182.) "Where a father bought a lottery ticket, which he declared he gave to his infant daughter, and wrote her name upon it, and after the ticket had drawn a prize, he declared that he had given the ticket to his child, and that the prize money was hers, this was held sufficient for a jury to infer all the formality requisite to a valid gift." (*Grangiac* v. *Arden*, 10 *John.* 293.) "It is a sufficient delivery to constitute a valid gift to a married woman of household furniture in the possession and use of herself and family, where one who has just purchased under a chattel mortgage made by her husband, pointing out certain of the articles to the wife, says to her, 'I give you these and all the property I have purchased this day.'" (*Allen* v. *Cowen*, 23 *N. Y. Rep.* 502.) The possession of the property after the gift by Mary Cooper the elder, to the plaintiff, was in the plaintiff. (*Allen* v. *Cowen, supra.*) In this case it was held " that the property remaining after the gift in the house occupied by the husband and wife together is to be deemed in the possession of the wife, and is not liable to execution against the husband." There was a valid delivery of the property. (1.) The keys to the bureau and trunks were given to the plaintiff to consummate the gift. (2.) After this delivery of the keys they remained in the possession of the donee until the donor's death. (3.) The property was spoken of as the plaintiff's by the donor after the gift, and was regarded as in her possession. (4.) The gift was made deliberately and with all due formalities. (5.) The donee asserted her title to the property after the donor's death. 2. The action was properly brought by the plaintiff in the name of Mary Cooper. That was the name she had been known by for the greater part of her life.

Cooper *v.* Burr.

III. There was no error in the judge's charge, and the judgment should be affirmed.

*By the Court*, LEONARD, J. It is essential to a valid gift by parol, that there should be an actual or symbolical delivery. The title does not pass unless possession, or the means of obtaining it, are conferred by the donor and accepted by the donee.

The situation, relation, and circumstances of the parties, and of the subject of the gift, may be taken into consideration in determining the intent to give, and the fact as to delivery. A total exclusion of the power or means of resuming possession by the donor is not necessary. A declaration of the intent to give, and an indorsement of the name of the donee on the back of a lottery ticket, with a reaffirmation of the gift after the ticket had drawn a prize, was held to be a valid gift of the prize to a child of the donor, in *Grangiac* v. *Arden*, (10 *John.* 293.) Where the donor and donee were living in intimate relations, occupying the same room in which was the subject of the gift, a declaration by the donor that he gave to the donee his trunk and all that was in it, was held to constitute a valid gift of money in a savings bank, the pass book of the donor being in the trunk at the time. It does not appear that the donee had taken any manual possession of the trunk or pass book, except being left temporarily by the donor in the exclusive enjoyment of the room in which was the trunk, where he subsequently returned. (*Penfield* v. *Thayer*, 2 *E. D. Smith*, 305.) The purchaser of household furniture at an auction sale under a chattel mortgage, give it to the wife of the mortgagor, in whose possession and use it was, and had been previously, by the declaration, "I gave you all the property I have purchased this day;" and this was held to be a valid gift, against a creditor of the mortgagor, notwithstanding the purchaser had not seen all the furniture purchased, and there was not at any time an actual change in the use or possession. (*Allen* v. *Cowen*, 23

*N. Y. Rep.* 502.) Vide the same case, 28 *Barb.* 99, where numerous cases are well reviewed by Justice Rosekrans, who came to an opposite decision, in which his associates there concurred, but which was reversed in the Court of Appeals.

The fact that the trunks and bureau or their contents, were not removed, or even handled, so far as appears from the evidence, is not a controlling consideration in this case. The language of the donor, accompanied by a delivery of the keys to the trunks and bureaus containing the coin and other property, evinced the intention of the donor, and placed the donee in the possession of the means of assuming absolute control at her pleasure. The cases to which I have above referred, together with others more particularly reviewed by the learned authors of the opinions in the cases cited, are quite sufficient to establish the validity of the gift in this case, assuming the evidence of the plaintiff to be the truth. The question of the veracity of the witnesses, and of the preponderance of testimony in respect to the manner and circumstances attending the gift, and the capacity of the donor, was properly left to the jury, and the verdict can not be disturbed on these grounds.

The defendants sought to prove the declarations of third parties at the trial, in order to show their reasons for not having caused the donor to be sent to an insane asylum. It requires no argument or citation of authority, to establish the correctness of the ruling which excluded this evidence.

It was also insisted that the plaintiff's true name is Mary Flood, and that the name in which she brought this action is a misnomer, and that the action should abate on this ground. It appears from the evidence that the plaintiff was called Mary Flood during her early infancy, but that she has been called Mary Cooper by the donor, whose name she took, and by all her acquaintance, since about the age of nine or ten years, a period of about twenty years. I think the name in which the action is prosecuted was the name by which the plaintiff was generally known, at the time this action was

commenced, and long before, and that the use of the name of Flood might have afforded ground for a valid plea in abatement. This objection is not well taken.

The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, September 19, 1865. *Ingraham, Leonard* and *Sutherland,* Justices.]