In the Matter of HAROLD NITZBERG, Petitioner, against BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, Queens County, March 28, 1951.

*Alvin J. Sander* for petitioner.

*John P. McGrath, Corporation Counsel,* for respondent.

DALY, J. Application, pursuant to article 78 of the Civil Practice Act, for an order requiring the respondent, the board of education of the city of New York, to register petitioner's son under his true name. The infant, not quite seven years of age, is now enrolled under a surname acquired by his mother by remarriage since her divorce from petitioner.

The boy was born on June 25, 1944. In 1946, his parents separated. His mother went to Florida and on October 16, 1946, obtained a decree of divorce which awarded her custody of the child. She then returned with her son to New York City where she took up residence with her parents. Petitioner was afforded visitation with his son both before and after his wife's trip to Florida and, except when he was ill, visited his son at least once a week until 1948, when he accepted a position in Denver, Colorado, where he now resides, and where, according to the brief, he is a professor of sociology at the University of Denver. Petitioner continued to send semimonthly payments of $25 to his wife for the support of his son. He also sent periodical gifts to him and occasionally received brief letters from him.

In November, 1949, petitioner received a letter from his wife advising him that she expected to remarry and suggesting that her prospective husband would be a father to his son. Petisioner immediately wrote back stating that under no circumstances would he renounce his son and that he would remain the boy's father for life. He never thereafter heard from his wife. He continued to send checks for the boy's support, but these were neither acknowledged nor deposited for collection. Similarly, petitioner's gifts to his son were not thereafter acknowledged.

When petitioner could obtain no information about his son, he communicated with his attorney who wrote a letter to her. She called the attorney by telephone and advised him that she was under no obligation to make reports concerning the boy. In July, 1950, petitioner came to New York and called at the home of the wife's parents. His son was no longer there and petitioner could obtain no information as to his whereabouts. Petitioner's attorney, by searching the marriage registers, was able to discover the wife's new name and thus petitioner was able to locate his son. Petitioner alleges that his wife was shocked to learn that petitioner had discovered her whereabouts and admitted that she had hoped he would never find his son.

The argument advanced by respondent in opposition to this application is that the child will lack a sense of security unless

he can " completely identify himself with his own home." An argument not unlike this was advanced as one of three in *Matter of Epstein* (121 Misc. 151), and was rejected by the court as " wholly insufficient." The court said (p. 152) : " The child should and in the course of time must know of his parentage. If, when he fully appreciates the circumstances and is capable of selecting a name for himself, he chooses to select the surname of the man termed in the petition as his ' stepfather,' he may do so. *Smith* v. *United States Casualty Co.*, 197 N. Y. 420. Until then the court will not and should not endeavor to interfere with the usual custom of succession to paternal surname nor foster any unnatural barrier between the father and son."

The facts in *Matter of Grisar* (N. Y. L. J., Dec. 22, 1939, p. 2282, col. 2, [Froessel, J.]) were very similar to the case at bar. There the parents had separated and entered into an agreement with respect to alimony payments and custody. Thereafter, the wife secured a Florida divorce and remarried. She then brought a proceeding to change her eight-year-old son's name to that of her second husband. The father of the boy objected. Mr. Justice Froessel denied the application.

The question of a mother's right to change the name of the children in her custody has also been presented in situations other than direct applications for such relief. Thus, in *Matter of Cohn* (181 Misc. 1021), the question arose as an incident to a special proceeding to determine custody. The mother had conferred the surname of her second husband upon the children. The court directed her to undo the changes already made and restrained her from further attempts to change the surname of the infants without further order of the court. In its decision, the court stated (p. 1021) : " The contention that the selection of a name for these infants is but an incident to her general guardianship, which thus gives her freedom of action in the matter, is wholly unsound. They remain members of the father's family. That status has been in no wise altered, and, in the circumstances here disclosed, remains paramount to any exercise of discretion in favor of respondent. Until the children are themselves competent to make a choice, reasons far more compelling than any here shown would be required to justify departure from the customary use of the paternal surname."

Similarly, in *Matter of Ebenstein* (85 N. Y. S. 2d 261), the court directed the respondent to desist from imposing upon the infant her own maiden name or any name other than that of the child's father.

In *Schoenberg* v. *Schoenberg* (57 N. Y. S. 2d 283) the question arose by motion in an action for divorce. There too the wife had remarried and had changed the name of her two children to that of her second husband. The court granted defendant's motion for an order directing the plaintiff to cease and desist from attempting to impose upon the children any name other than that of the defendant. The Appellate Division modified this order, on a procedural point, by inserting a provision that the final judgment of divorce be deemed amended, and as so modified, affirmed the order (269 App. Div. 1048). The Court of Appeals affirmed (296 N. Y. 583).

From the above cases, it is apparent that one parent cannot, unilaterally and against the wishes of the other parent, change the name of their children, whether such change be attempted by court order or by extrajudicial means.

The application is granted. Settle order on notice.