Bernard S. Meyer, J.
This application, made hy four infants by their mother and on notice to their father, seeks permission, pursuant to article 6 of the Civil Bights Law to change their surname to that of their stepfather, and in the case of the oldest infant, who is named for his father, but has used his *206 middle rather than his first name, also to drop his first name and hereafter to use his middlé name as his first name and his mother’s maiden name as his middle name. The parents of the infants were married in 1941, separated in 1956 and were divorced in 1958 by a Nevada decree made in a proceeding brought by the mother and in which the father appeared. By order to show cause and petition, the father seeks an order requiring the mother to cease and desist causing the children to be known by any other surname than his, to cause school and other records to be rectified, and to refrain from changing the surname of any of the children except by order of court. While there was no matrimonial action in New York and there is no provision in article 6 of the Civil Rights Law authorizing consideration of such a petition in a change of name proceeding, it appears that proceeding by petition and order is the correct way to bring on the issues raised by the father (Finlay v. Finlay, 240 N. Y. 429, 433-434; People ex rel. Sisson v. Sisson, 246 App. Div. 151, 155, revd. on other grounds 271 N. Y. 285; Matter of Ebenstein, 85 N. Y. S. 2d 261; see Galanter v. Galanter, 133 N. Y. S. 2d 266; People ex rel. Way v. Williams, 101 N. Y. S. 2d 383; Matter of Bopp, 58 N. Y. S. 2d 190, 195) and that no reason exists why the two petitions should not be considered together. A hearing has, therefore, been held on both at which both sides were given full opportunity to adduce testimony. For the reasons hereafter stated, both the petition for change of name and the petition for a restraining order are denied. In the father’s answering papers on the article 6 application, ho also seeks an order restraining the mother and stepfather from interfering with his visitation rights as fixed in a separation agreement. No separate motion or cross motion for that relief has been made nor was such relief requested in the father’s petition. The question is, therefore, not properly before the court and will not be ruled upon.
Under section 63 of the Civil Rights Law a petition for the change of an infant’s name should be granted if (1) there is no reasonable objection to the proposed change and (2) the interests of the infant will be substantially promoted by the change. The father objects to the change because it will adversely affect his relationship with the children, will create an “impossible climate” for visitation, teaches the children deceit since they will be using a name not theirs .in order to cover possible embarrassment, and because use of the stepfather’s name would be personally obnoxious to him. The last three reasons require little consideration; the occasions for use of a surname during *207 visitation are so few and the practice of changing surnames so long standing and well recognized, particularly where children of a broken marriage are living with their mother who has remarried, that neither the second nor the third can be, considered reasonable. Likewise, the fourth, which is purely personal is no sufficient basis to deny the change if otherwise warranted.
Possible adverse effect on the relationship between a father and his children is, however, a valid ground of objection, where the father has evidenced sustained interest in the children by continuing support payments and visitation and does not unreasonably delay in objecting to the change (Matter of Wittlin, 61 N. Y. S. 2d 726; Matter of Epstein, 121 Misc. 151; Matter of Nitzberg v. Board of Educ. of City of N. Y., 200 Misc. 748; Matter of Otis [Weiss], 204 Misc. 1073; Matter of Simon, 1 Misc 2d 177; Matter of Schultz [Ortenberg], N. Y. L. J., Nov. 14, 1957, p. 7, col. 2; see Matter of Pollack v. Zipper, 2 A D 2d 756). The mother does not deny that support at the rate of $250 per month, as required by the separation agreement has been regularly paid, but says that, by his conduct prior to divorce and during visitation periods since, the father has himself alienated the children. She argues further that the relationship of the children to their stepfather is close, that he participates in school and other activities with them, that they voluntarily called him “Dad” and began using his surname, and have in the last two years shown marked improvement from the upset children (as evidenced by stammering, or bedwetting or nervousness) they were previously, that the use of the father’s surname is a constant reminder of unpleasantness, that the status achieved by the children themselves in their school, church and other relationships should be continued, and that the emotional well-being and security of the children will be promoted by the change to the stepfather’s surname, thus creating a cohesive family unit.
The conduct of the father alluded to is alcoholism and the constant involvement of the children in the emotional difficulties of the father. The court is satisfied from the evidence that the father’s drinking was a major cause of the family breakup, that the attitudes and aptitudes of the children have been substantially improved by their new environment, and that they have a warm relationship with their stepfather and a strained relationship with their natural father. Since the warm relationship and improved environment will continue whether or not the petition is granted, it does not necessarily follow, howeY'er, that *208 the children’s interests will be substantially promoted by the proposed change.
The court cannot say on the record before it that the natural father has not exhibited a desire to preserve the parental relationship. Nor can it ignore the effect on that relationship of the antipathy between father and stepfather, the greater material advantages which the stepfather with his vastly larger income freely gives, and the disadvantage at which the natural father is placed by his separation from and sporadic contact with the children. Much of the father’s disadvantage is, it is evident from the testimony, and particularly from that of the children, of his own doing. The question, however, is not which of the adults is right or wrong, but what course will best serve the interests of the children. Since the granting of the petition in the circumstances of the instant case will, in the court’s opinion, contribute to the further estrangement of the children from their natural father and such estrangement is, generally, not in the best interest of children; since the court is not convinced that the present estrangement is so completely the fault of the father that he should be held to have forfeited his right to interpose objection nor that the present estrangement is beyond conciliation given an intelligent and less emotional approach on the part of the adults, and particularly on the part of the father; since the children involved in this proceeding are of sufficient age and understanding to continue the use of the stepfather’s surname through exercise of the common-law right hereinafter referred to to change their names and, the court finds from their testimony, are doing so of their own volition; and since a name change judicially effected apparently cannot thereafter be changed except by like decree (Civil Rights Law, § 64; Smith v. United States Cas. Co., 197 N. Y. 420; Matter of Klein v. Steel, 186 Misc. 98, affd. 270 App. Div. 806; Matter of Biegaj, 25 N. Y. S. 2d 85), the court concludes that the interests of the children will not be substantially promoted by granting the requested order (see Matter of Rounick, 47 Pa. D. & C. 71).
The Civil Rights Law provisions establishing judicial procedure for change of name are in addition to, and not in substitution for, the common-law methods of change (Smith v. United States Cas. Co., supra). Surnames are said not to have been used in England until the Norman conquest (Fox-Davis, A Treatise on the Law Concerning Names and Change of Name [1906], 14; Dudgeon, A Short Introduction to the Origin of Surnames [1890], 2) and to have come into general use only toward the end of the 14th century, after Henry VIII estab *209 lished regulations governing the recording of births, marriages and deaths (Matter of Snook, 2 Hilt. 566, 571; Matter of Romm, 77 Pa. D. & C. 481). About that time they became hereditary (Bardsley, English Surnames [1875], 3), but only by custom (Kay v. Bell, 95 Ohio App. 520; 16 Encyclopaedia -Britannica [1953 ed.], p. 64) and the custom has never ripened into a rule of law (Matter of Snook, p. 572). The change could be accomplished by an act of Parliament or by the King’s license (Matter of Snook, supra) by deed poll usually accompanied by an advertisement (Phillimore, Changes of Name [1905], xxxii; 23 Hals-bury’s Laws of England [2d ed.], 560) or “ as in the first instance they were arbitrarily assumed, so they could be changed at pleasure,” (23 Halsbury’s Laws of England [2d ed.], p. 556) and without legal formality (Smith v. United States Cas. Co.; Matter of Snook). The right of a minor to change his name without legal formality was, moreover, recognized as early as 1822 in Doe dem. Luscombe v. Yates (5 B. & Ald. 544) and has been recognized in California (Matter of Useldinger, 35 Cal. App. 2d 723) ; in New Jersey (Bruguier v. Bruguier, 12 N. J. Super. 350); in Mississippi (Marshall v. Marshall, 230 Miss. 719); in Ohio (Kay v. Kay, 112 N. E. 2d 562); and in New York (Cooper v. Burr, 45 Barb. 9, 34); (see 1953 Report of N. Y. Law Rev. Comm., pp. 206-213). Only the Bruguier case involved the right of an infant to make the change over the objection of her father, but Doe dem. Luscombe v. Yates (supra), which involved compliance with the provision of a trust requiring a change of name held (p. 556) that: “ a name assumed by the voluntary act of a young man at his outset into life, adopted by all who know him, and by which he is constantly called, becomes, for all purposes that occur to my mind, as much and effectually his name as if he had obtained an act of parliament to confer it upon him.” Whether public interest in the maintenance of family harmony and parental authority will necessitate denial of the right of change to an infant living with both parents or with a sole surviving parent (see 1953 Report of N. Y. Law Rev. Comm., p. 213) need not now be determined. Where the parents are separated or divorced, policy considerations suggest that any change brought to a court’s attention be closely scrutinized to determine that it is actually the infant’s own decision rather than that of the parent with whom he lives, but do not-require that the common-law method of voluntary change be denied the infant (n., 44 Cornell L. Q. 144,149).
The Luscombe case does not indicate when the name change there involved occurred except that it was ‘1 before he became of age ”; the Bruguier case, only that the infant against whom *210 an injunction was sought was of high school age. The change recognized in the Useldinger case had been made at age 12, and that involved in Cooper v. Burr (supra, p. 34) at “the age of nine or ten years.” The Court of Appeals has, however, held that a child 12 years of age in the custody of one parent is, if his testimony reveals him to be old enough to testify intelligently and the evidence shows it to be in the infant’s best interests to permit him to do so, competent, notwithstanding the provisions of an earlier separation decree and the objection of the other parent, to select the religion he chooses to follow (Martin v. Martin, 308 N. Y. 136; see, also, Hehman v. Hehman, 13 Misc 2d 318; Booke v. Booke, 207 Misc. 999). Further, in some change of name cases, the court, without specifying whether it meant legal age or only the mental capacity to make an intelligent choice, noted that the child could make the change when
he “reached a mature age” (Matter of Pollack v. Zipper, 2 A D 2d 756, supra); or when “ capable of selecting a name for himself” (Matter of Epstein, 121 Misc. 151, 152, supra); or when “ competent to make a choice ” (Matter of Cohn, 181 Misc. 1021); or “ when he has attained a certain maturity in understanding the circumstances ” (Matter of Baldini, 17 Misc 2d 195); (see, also, 1953 Report of N. Y. Law Rev. Comm. pp. 208-210,), and in two change of name cases concerning children over 16, it has been recognized that the child’s preference should normally be decisive (Matter of Harris, 43 N. Y. S. 2d 521 [boy of 18]; Matter of Horn, 21 N. Y. S. 2d 453 [boy of 16]; cf. Matter of Wittlin, 61 N. Y. S. 2d 726, supra). The infants involved in this proceeding are now 18 years and 4 months, 15 years and 8 months, 13 years and 8 months, and 11 years and 2 months of age, and the court is satisfied from their testimony that they are of sufficient understanding and that the change has been made of their own volition. On analogy to the religion cases above referred to and on the basis of the name change cases cited, the court holds that the infants are competent to continue the use of the names referred to in their petition without court order. Bach will also be free to return to the use of his father’s surname whenever he is satisfied that this is the proper course. Were it not the law that the infants can exercise their own individual volitions in using the surname of either the father or the stepfather, the court would be constrained to grant the order under section 63 of the Civil Rights Law. Since it is the law, clearly no injunction would issue against the children to prevent their so doing under the circumstances of this case. It is, therefore, unnecessary to consider the further argument *211 advanced, on behalf of the children that their common-law right, because constitutionally protected, cannot be enjoined.
But, the father argues a number of cases have referred to the right of a father to have his child bear his surname (Schoenberg v. Schoenberg, 57 N. Y. S. 2d 283, mod. 269 App. Div. 864, 1048, affd. 296 N. Y. 583; Matter of Lyons, 19 N. Y. S. 2d 839; De Vorkin v. Foster, 66 N. Y. S. 2d 54; Young v. Board of Educ. of City of N. Y., 114 N. Y. S. 2d 693; Steinbach v. Steinbach, 119 N. Y. S. 2d 708; Matter of Baty, N. Y. L. J., Aug. 3, 1956, p. 6, col. 7; Matter of Baldini, 17 Misc 2d 195, supra) and that right has been protected by restraining order directed against the mother (Schoenberg v. Schoenberg, supra; De Vorkin v. Foster, supra; Matter of Ebenstein, 85 N. Y. S. 2d 261, supra; Matter of Cohn, 181 Misc. 1021, supra; Steinbach v. Steinbach, supra; Galanter v. Galanter, 133 N. Y. S. 2d 266, supra; Matter of Schultz [Ortenberg], N. Y. L. J., Nov. 14, 1957, p. 7, col. 2, supra) or against the Board of Education (Young v. Board of Educ. of City of N. Y., supra; Matter of Nitzberg v. Board of Educ. of City of N. Y., 200 Misc. 748, supra; Witover v. Board of Educ., N. Y. L. J., Jan. 3, 1957, p. 10, col. 6). Therefore, it is argued an injunction order should issue in this case against the mother.
Only the Steinbach case refers to the legal right of the father; all of the others refer to a “ natural, ” “ fundamental, ” “ primary ” or “time honored” right. Without doubt hereditary surnames are customary, but as we have seen that custom has never amounted to a common-law legal right. Prior to the 1953 amendment of article 6 of the Civil Rights Law the consent of both parents to the change of name of an infant under 16 years of age was required (1953 Report of N. Y. Law Rev. Comm., pp. 193-205 and see Ann. 53 A. L. R. 2d 914, 915). The restraining orders granted were predicated on that requirement, either explicitly (Schoenberg v. Schoenberg, 57 N. Y. S. 2d 283, 284, supra; Matter of Ebenstein, supra; Steinbach v. Steinbach, supra; Galanter v. Galanter, supra); or implicitly (Matter of Cohn, supra; De Vorkin v. Foster, supra; Matter of Nitzberg v. Board of Educ., supra; Young v. Board of Educ., supra; Matter of Schultz [Ortenberg], supra). In only two cases, Matter of Schultz (supra) and Witover v. Board of Educ. (supra), have restraining orders issued since the 1953 amendment. In the Schultz case the pre-1953 cases cited above were cited as authority without discussion; in the Witover case no authorities were cited, but enforcement of the order directed to the Board of Education was suspended to permit the mother to make formal *212 application on notice to the father for change of the child’s name. The court concludes that, because of the 1953 amendment, issuance of a restraining order against the mother cannot be predicated on the authorities cited.
Further doubt concerning the propriety of issuing such an order arises from the continued refusal of the Court of Appeals to recognize protection of a name as a proper subject for injunction in actions between a wife and her husband’s paramour (Baumann v. Baumann, 250 N. Y. 382; Somberg v. Somberg, 263 N. Y. 1; Lowe v. Lowe, 265 N. Y. 197). Even if it be assumed that that court, when presented with the question, will distinguish wife-paramour eases and follow the apparent trend toward use of injunctive process between parents to prevent the unilateral change of a child’s name (Mark v. Kahn, 333 Mass. 517; Margolis v. Margolis, 338 Mass. 416; Reed v. Reed, 338 P. 2d 350 [Okla.]; Sobel v. Sobel, 46 N. J. Super. 284; Ann. 53 A. L. R. 2d 914) there is no basis for issuance of such an injunction in the present case (Mark v. Kahn, supra). The father’s proof failed to substantiate the claim that the change of name was brought about by the mother rather than the children. In fact, on the whole proof, the court finds that the children are registered at school under the father’s name, but through their own acts and choice are generally known in school, among their friends and in the environs of their present residence by the surname of the stepfather. Though the father’s petition alleged that “ very effort was being made by Respondent ” (the mother) to create the impression that the stepfather is the natural father and that the stepfather had instructed the school authorities to see that the children were known by his surname and that the mother’s action “ is part of a well-calculated plan to alienate the children ” from the father, there is a failure of proof to sustain these allegations.
The petition by the father for a restraining order will, therefore, be denied; on the petition for change of name, the order to be entered denying the petition may recite as one of the reasons for such denial the finding of the court that the infants are of sufficient age and intelligence to make the requested change without judicial proceedings. No costs will be allowed in either proceeding. The disposition made will give the father the opportunity, with the help of church or psychiatric counseling, to re-establish his relationship with the children (see Matter of Proman, 63 N. Y. S. 2d 83). If he makes that effort, it will be incumbent upon the mother and stepfather, in the best interests of the children, to foster the relationship. The disposition is, however, without prejudice to such further application *213 as any of the parties, on a showing of changed circumstances, may see fit to make.
To protect the interests of the infants, this decision will be published under fictitious names and the file will be ordered sealed.