SELDEN S. MARVIN, receiver of Charles W. Weeks, *vs.* COE S. BUCHANAN.

A written contract, in its caption, named "Charles W. Weeks" as one of the parties; in the body, he was called "the said Charles Weeks;" and in the subscription, at the end, he, as well as the other party, employed only the initials of his christian name. In neither the body of the contract nor in the signatures, was there any indication that it was the contract of a copartnership firm. At the date of the contract "C. W. Weeks" was a partner in a firm doing business under the name of "C. W. Weeks," but the matters included in the contract did not relate to the partnership business. And there was no proof that the other party to the contract knew that "C. W. Weeks" represented a partnership firm, until after the execution of the contract. The contract was drawn by Weeks, and in all the correspondence, &c., relating to it, the personal pronoun "I" was employed by him; the words "firm," or "we" not at all. *Held* that this was the individual contract of C. W. Weeks, and not that of the firm of which he was a member.

An agreement was made by W. as agent of B., "to use his best efforts" to purchase certain stock for B.; the terms of payment, and W.'s compensation for his agency—his commissions—being specifically fixed therein, and agreed to. *Held* that in this transaction W. was the broker of B., and as such was bound, not only by the terms of his contract, but by his duty to his principal, to use his best efforts to buy such stock.

That to buy it on other terms, more favorable to himself, and more disadvantageous to his principal, would be a fraud upon his principal; and the latter would not be bound by the contract, as between agent and principal.

And that, should he obtain from his principal, by fraudulent representations or pretenses, the amount of these fraudulent gains, the principal could, upon discovery of the fraud, rescind the contract, and recover back the consideration paid.

Nor would the assignment of the claim, by the fraudulent agent, or becoming himself personally irresponsible, defeat the right of the defrauded principal to set up the fraud, in defense of an action by the assignee.

*Held, also,* that no action could be maintained by the assignee, upon such a contract; nor for the sum actually paid by the agent; the whole contract being vitiated by the fraud.

Where an agent for the purchase of stock, after having agreed "to use his best efforts," to purchase the same, at a specified price for cash, fraudulently *concealed* from his principal the fact that he had already made a contract for the purchase thereof, on time, upon his own unsecured paper; and, upon a false representation as to the sum he had paid for the stock, obtained from his principal a larger sum than he had paid by his own notes on time, and a larger amount than he was entitled to, for commissions; *Held* that the

transaction was fraudulent, and no action would lie upon it, by the agent, or his receiver.

*Held, also,* that payment of the money, by the principal, in ignorance of the fraud, was neither a waiver, nor an estoppel.

*Held* further, that the mingling of the transaction with others that might be legal, so as to prevent a return or tender back of the stock, did not change its character, or hinder the setting up of the fraud as a defense.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the report of Isaac Edwards, Esq., sole referee.

The action grew out of a written contract, as follows :

"This agreement, made this 12th day of February, 1869, by and between C. S. Buchanan, of the city, county and State of New York, and Charles W. Weeks, of Albany, in said State, witnesseth,

1st. That in case said Weeks is able to obtain, and tenders to said Buchanan, a valid assignment and transfer of the stock in the Pioneer Paper Company, now held by Mr. Wilson, then said Buchanan will accept said stock, and the transfer and assignment thereof, and will pay said Weeks therefor, the sum paid therefor by said Weeks, not exceeding its par value, but in case such sum be less than its par value thereof, then said Buchanan will pay therefor twenty-five per cent in addition to such sum; said Buchanan will also pay said Weeks $100 for his services in purchasing said stock, in addition to the prices thereof aforesaid.

The payment aforesaid is to be made by a sight draft on Wm. H. Cooper, drawn by Weeks.

2d. In case of the sale, assignment and transfer above mentioned, being made, said Buchanan also agrees to purchase, at a fair valuation, all the stock, consisting of rags, straw, horses, coal, wood and other articles now owned by said Charles Weeks, or by A. Weeks, and at the premises of said Pioneer mill.

3d. Said Buchanan also agrees to pay any indebtedness of said Pioneer mill, to said A. Weeks, which shall be acknowledged by the trustees thereof, or the treasurer

thereof, provided the purchase aforesaid be made by said Buchanan.

4th. Said Buchanan also agrees to accept an assignment and transfer of the lease of A. Weeks, of the premises owned by the Pioneer Paper Company, upon the terms therein contained, provided the aforesaid sale be made.

5th. The payment for the stock owned by Charles Weeks or by A. Weeks, as secondly above mentioned, is to be made within twenty days from the date hereof. 6. Mr. Buchanan further agrees to protect said Weeks against any claim that he (Mr. B.) may have against the Pioneer Paper Company, in the matter of a judgment now held by him against said Pioneer Paper Company, for $21,000, or thereabouts, and hereby insures Mr. Weeks from payment of any part of the same. In witness hereof we have hereunto set our hands and seals the day and year above.

7. Said C. W. Weeks, on his part, agrees to use his best efforts to buy the stock of Wilson, above named, being forty-nine shares, and to make the transfer above described written." Signed by the parties.

The other material facts will sufficiently appear in the opinion. The referee reported in favor of the plaintiff for $7754.98. To his findings of fact and law, and his refusals to find, and to his rulings on the trial, exceptions were duly made.

*A. J. Parker,* for the plaintiff.

*T. M. North,* for the defendant.

*By the Court,* P. POTTER, J. 1. A technical difficulty arises, at the beginning, in determining whether Charles W. Weeks, of whose property the plaintiff is the receiver, is the *individual* Charles W. Weeks, or, whether the plaintiff is receiver of Charles W. Weeks, the general partner of a limited partnership of which one Bruyn was the special

Marvin *v.* Buchanan.

partner, and who transacted their copartnership business under the firm name of "C. W. Weeks." The contract in question, containing seven clauses, names Charles W. Weeks as one of the parties, in its caption. In the body, he is called "the said Charles Weeks," and in the subscription at the end he, as also the other party, employs only the initials of his christian name. In neither the body of the contract, nor in the signature at the end, is there any indication that it was the contract of a firm or a copartnership. This point it seems necessary to consider, as the defendant was not a party to the proceedings by which the plaintiff was appointed receiver; and as the defendant, in his answer, denies all knowledge of them, it is necessary for the plaintiff to establish his *status* as the receiver of " C. W. Weeks," the general partner of a firm, and not the receiver of Charles W. Weeks the individual. And this raises the first question on the trial, upon the objection to the admission of the evidence of the contract upon which this action is brought. If this was the contract of Charles W. Weeks, the individual, the admission of this evidence was error; and the like objections exist to all the evidence of the exhibits in the case, introduced on the trial. They depend upon the same hypothesis; they prove nothing against the defendant, and show no title in the plaintiff to the instrument assigned, until his *status* is legally established. I have been unable to find, in the testimony, any evidence that the defendant knew that " C. W. Weeks" represented a copartnership firm, until his letter of May 31, 1869, which was sixteen days after the appointment of the plaintiff as receiver. I am not, therefore, prepared to sustain the second or third finding of the learned referee in its spirit and effect, to wit, that on the 12th of February, 1869, the defendant, Coe S. Buchanan, executed and delivered to C. W. Weeks, such special partnership, the contract introduced in evidence, and marked "Exhibit A."

The legal effect of this contract, (Exhibit A,) is, that it is the individual contract of Charles W. Weeks. The The evidence is, that he prepared it. In all the correspond-. ence and telegraphic communications in relation to it, before the appointment of the receiver, the personal pronoun "I" was employed by Weeks; the words "firm" or "we," not at all. If this was an individual contract, it has not been passed to the receiver, by the assignment to him, nor by law. The matters to which that agreement relates are not included in the business to which the partnership related. That business, as proved by Charles W. Weeks, was "general paper business, also rags, materials for paper, and chemicals. We sold nothing except paper, materials for making paper, and stationery, and bought the same articles. Nothing else." Of course a broker's business is not included.

2. A part of the sum for which the learned referee made his report in favor of the plaintiff was the item of forty-seven shares of capital stock in the Pioneer Paper Company, purchased by Charles W. Weeks of William Wilson, for the defendant, and for which the referee charged the defendant $4275.

This purchase was made upon the authority of the first and seventh clauses of that contract. (Exhibit A.) It may be safe to say that the claim of the receiver, (if his title was otherwise good,) is no better than would have been the claim of Charles W. Weeks, or of C. W. Weeks, upon the same contract, had no assignment been made, or had no proceedings to appoint a receiver been had. What was the character of the transaction between the defendant and Charles W. Weeks, in regard to the purchase of this stock? · In what character did Weeks act? Whether we take the contract or its variations by telegraph or letter, Weeks, in such purchase, was the defendant's agent. Whether Weeks made the contract with Wilson in person, or through the instrumentality of his brother Addison, he

Marvin *v.* Buchanan.

was still the defendant's agent, in that purchase. The purchase was made for Buchanan, not for the firm of which Buchanan was a member; paper dealers. Buchanan was to pay for it. Not only the terms of payment, but Weeks's compensation for his agency—his commissions— were specifically fixed and agreed to. He was an individual broker in this transaction—the defendant's individual broker. (*Story on Agency,* § 28. *Russell on Factors,* 3, 4. *Pott* v. *Turner,* 6 *Bing.* 706. *Burrill's Law Dic., tit. Broker.*) He (Weeks) was bound not only by the terms of his contract, but by his duty to his principal, "to use his best efforts" to buy this stock. He was to be paid upon this assumption, for his services and risk, a certain sum. To buy it on other terms, more favorable to himself, and more disadvantageous to his principal, would be a fraud upon his principal, and the latter would not be bound by the contract, as between agent and principal. And should he obtain from his principal, by fraudulent representations or pretenses, the amount of these fraudulent gains, the principal could, upon discovery of the fraud, rescind the contract and recover back the consideration paid. Nor would the assignment of the claim, by the fraudulent agent, or becoming himself personally irresponsible, defeat the right of the defrauded principal to set up the fraud, in defense of the action of the assignee. No action could be maintained by the assignee, upon such a contract; nor for the sum actually paid by the agent.

If such a fraud was committed in this case, by Weeks, he could not recover; his receiver cannot recover even the sum actually paid by Weeks, for the stock. The whole contract was vitiated by the fraud.

Was there a fraud committed by Weeks, upon the defendant? The learned referee has *not,* in terms, found the fraud, though requested in the sixth request so to find. We are, therefore, to look at the testimony, to see whether he ought to have so found. If the testimony

justifies such a finding, it was demanded as an act of justice. On this question there is no material disagreement as to the facts. Weeks was the agent of Buchanan, his principal. By law and by his agreement, he was to use his best efforts to purchase for his principal. It is immaterial whether he performed the act personally or by his brother; he agreed to perform the act; the manner of payment by the principal was agreed upon; it was the equivalent of cash. Weeks did purchase. 1st. He did not purchase for cash; he paid but $500 in cash, and the remainder upon time, and upon his own unsecured paper. This was a fraud. 2d. He would have been entitled, by his contract, had this purchase been for cash and according to contract, to a commission of $275, $100 for a certain commission, and $175 for the 25 per cent on $700, being so much less than par. He fraudulently *concealed* from his principal the actual contract he made in the purchase, and fraudulently represented that he had purchased it for cash, or had given his own check for $4700, and would thus only receive $100 commission. And upon this representation actually obtained $800, besides all he agreed to pay on time, and obtained, in the checks from the defendant, (the equivalent of cash,) a sum larger than the agent paid by his own notes on time. There is no conflict of fact as to this. Weeks himself swears to this. He presented to the defendant a written statement to that effect, and swears that he did not tell the defendant he had bought it for less. And the defendant swears, and is uncontradicted, that Weeks told him that on the previous day he had given Wilson a check for $4700. This transaction can receive no other construction than that it was fraudulent. Had Weeks sued Buchanan for $4700, for money paid for this stock, could he have recovered? Upon the transaction as it is proved, could he have recovered any part of it? Could he have recovered what the referee allowed him, $4275? Certainly not. Not only on account of the

Marvin *v.* Buchanan.

fraud, but because he did not purchase in the manner directed. How then can the receiver recover? 3d. But Weeks was guilty of another fraud, in the transaction. On the 12th of February, 1869, in New York, he made his contract with Buchanan to "use his best efforts to buy the said stock." Two days before that, (to wit, on the 10th,) his brother Addison, for him, had made the arrangement with Wilson for this stock, and as to the terms of the purchase; and Charles W. Weeks swears that "Wilson came to me in Albany, on the morning of the 13th, and said he was ready to make the transfer of the shares as he had settled with my brother Addison. The terms, amount, and manner of payment had been fixed upon. Don't think it was ten minutes before he was off with his notes and money." Weeks did not use his best efforts to purchase the stock, and had the contract ever possessed any claim to validity, as between Wilson and Weeks, it was never valid as between Weeks and Buchanan; or if so, it was vitiated by the subsequent frauds in carrying it out between Weeks and Buchanan. Indeed, if there had been no fraud, Weeks could not have recovered upon it, on the ground that he had never performed the condition, in using his best efforts to buy the stock for the defendant. The payment of the money by the defendant, when ignorant of the fraud, is neither a waiver nor an estoppel. Nor does the mingling of the matter or transaction with others that may be legal, so as to prevent a return of the stock, or from being tendered back, change the character of the transaction, or hinder its being set up as a defense. The insolvency of Weeks rendered the tender unnecessary. (*Smith* v. *Brady*, 17 *N. Y.* 173, 174, 181, &c. *Cunningham* v. *Jones*, 20 *id.* 486.)

I am so entirely impressed that the learned referee erred in not finding this transaction a fraudulent one, from the undisputed evidence, and in allowing this con-

tract to be the basis of a recovery, that without pursuing the case further, I am for reversing the judgment and ordering a new trial, costs to abide the event.

Judgment accordingly.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, September 5, 1871. *Potter.* P. J., and *Parker* and *Learned,* Justices.]