By the Court.—Horace Russell, J.
The learned judge who presided at the trial of this case submitted it to the jury upon the sole question, whether the plaintiff became the owner of the property in question by gift from her husband. The jury found that she did. All intendments must be taken in favor of the verdict; if there is evidence to support it, it must stand.
The objections taken to the plaintiff’s title were, (1) that a wife cannot take a chattel by gift from her husband, and (2) that there was no such delivery and continued change of possession of the mare, as to constitute a valid gift. The decision here involves not only these questions, but the further question whether the defendant was in such position, as a lien creditor of the husband, as to permit him to dispute the validity of the plaintiff’s title.
At common law the chattels of the wife belonged to the husband, and if a chattel was given to her, it at once became his property. She could not take by gift directly from him (Bishop on Married Women, §§ 64, 66 and 87, note).
In equity, the wife might take by gift from her husband, and the gift would be sustained unless made in fraud of creditors (Orphan Asylum v. Strain, 2 Brad. [Surr.] 34 ; Bond v. Conway, 11 Md. 512 ; Poor v. Hazleton, 15 N. H. 564; Graham v. Londonderry, 3 Atk. 393 ; Deming a. Williams 26 Conn. 296: Borst v. Spelman, 4 N. Y. 284; Neufville v. Thompson, 3 Edw. Ch. 92; Mews v. Mews, 21 Eng. L. & Eq. 556). The act of 1848, chap. 200, § 3, as amended by the act of 1849, chap. 371, § 1 (3 P. 8. 6 ed. 160, § 77) provides that a “married female may take by inheritance, or by gift, grant, devise, or bequest, from any person other *109 than her husband&c. In none of the subsequent acts relating to the rights and liabilities of married women (1860 and 1862) is the above provision restricted or extended.
From this it would seem, at first glance, that it was the intention of the legislature that a wife should not be permitted to take by gift directly from her husband. But inasmuch as before the statutes a gift to the wife would be upheld in equity (Wilbur v. Fradenburgh 62 Barb. 474), the tendency of the later decisions has been to hold that the effect of the statutes has been, if not to convert the wife’s equitable title into a legal one, at least to clothe it with all the incidents of a legal title (Earl, Com. in Rawson v. Pa. R. R. Co., 48 N. Y. 216). In the case last, cited a judgment in favor of a married woman, in a suit brought in hei own name for a loss of wearing apparel given her by her husband, was sustained. In Savage v. O’Neill (44 N. Y. 298), a wife recovered judgment in trespass against a constable who seized a stock of goods, transferred to her by her husband, in payment of loans of money theretofore made by her to him. In Thompson v. Commissioners (79 N. Y. 54) a wife brought her action to redeem certain mortgaged premises, of which, at the time the mortgage was given, she owned one-third in fee, her husband having subsequently conveyed the other two-thirds to her by deed. It was held that the defendants were not in position to question the plaintiff’s title. In Meeker v. Wright (76 N. Y. 262), Judge Dareorth reviews the decisions on the subject, and holds a direct conveyance from husband to wife of an interest in lands, good. In Seymour v. Fellows (77 N. Y. 178), a wife sued in her own name upon a claim for work and labor, assigned to her by her husband, and her judgment recovered thereon was upheld.
It would seem from these cases that the unity of husband and wife as to property rights, has been practi *110 cally destroyed, and that they may have business dealings with each other, to most intents and purposes, like any other persons (See Mack v. Mack, 3 Hun, 323). If that be so, then the marital relation existing between donor and donee in this case, did not, as a matter pf law, invalidate the gift.
Was there such a delivery as to render the gift valid ?
The plaintiff testified: “I had often expressed a wish to own her, and had often asked my husband to give the mare to me. On this occasion (June, 1873) we had just returned from the depot, and I asked my husband again to give me the mare, and he replied, ‘ Very well, you like her so much, I will give her to you. She shall be your property.’ We were at the stable at this time, and right by the mare. I. thanked him for the present.”
The husband’s testimony was: “After coming from the steamboat, and after putting the mare in the stable, my wife and 1 were standing by her side in .the stall and I gave her to her then. She asked me for her then, and I said, ‘ Ton can have her ; she shall be yours,’ or words to that effect: and I called the man that was taking care of her and told him that after that the previous orders that I had given him about the use of the horses were changed, and that after this he was to deliver the mare to my wife, as she wanted her, as I had given her to her. My wife thanked me for the gift, and I believe went to .the extreme of kissing me for it, putting her arms around my neck.” Upon returning to the house plaintiff’s husband said to her mother, “Ma, I have given ‘Lady’ to Gertie.” The plaintiff further testified that whereas she had never before the gift given orders to the stableman in regard to “Lady,” or driven her “without the presence of her husband,” she did thereafter. About two years after the gift, the animal having developed speed, she was put in training, *111 with a view to sale, first,, with a Mr. Patterson for about a year, then with a Mr.. Doty, and then, in January, 1877, with the defendant; the arrangement with whom was made by the husband, without any intimation that his wife was the owner. After the gift the mare remained in the husband’s stable, and was kept at his expense, until put in training, and after that the bills for keeping, &c., were always paid by the husband, and rendered to him, in his own name.
In January, 1877, Mr. Armitage took the animal to the defendant, with whom he made an agreement to keep her for $30 per month. In May an agreement, not important here to state in detail, was made that the defendant should drive her in races in various parts of the country.
To constitute a valid gift there must undoubtedly be a delivery, and at the time of the gift. But the difficulty is, there is no settled rule as to what shall constitute a delivery. Perhaps in the nature of things there cannot be. The difficulty is enhanced where, after an alleged gift, the property remains in the custody of the giver, and is controlled by Mm much the same as before. The older cases are more strict than the modern ones. ' They demand an actual manual or symbolical delivery, as of a part for a whole, or a key, or some other badge of control. Of course, whether certain acts constitute a delivery, is greatly dependent on the nature of the property intended to be transferred. In the case at bar, if the mare had been led out of the stall, and her halter placed in the hand of the donee, with the words of gift testified to, it would have been a sufficient delivery to satisfy all the ceremonial requirements of the old English cases. Within the modern cases, I think the ceremony was unnecessary, and that it was a sufficient delivery to say, in her immediatepresence, “ I will give her to you ; she shall be yours.” While the words employed, strictly con *112 strued, seem to relate to a future intention rather than a present one, the surrounding facts sufficiently indicate that only a common inaccuracy of language was employed, really intended, however, to characterize a present act. Allen v. Cowan (28 Barb. 99 ; reversed, 23 N. Y. 502), was, as to this point, very much like the case at bar. A., being the owner of certain household furniture, executed a chattel mortgage upon it to his daughter, to secure a loan theretofore made by her to him. The mortgage was foreclosed, and at the sale the property was bought in by L., a nephew. He removed none of the property, but immediately after the sale took his aunt, A.’s wife, into the parlor, and pointing out a portion of the property, told her he gave her that and all the rest of the property purchased that day. The furniture continued to be used by A.’s family precisely as it had been before. It was subsequently seized on execution against A., whereupon A.’s wife brought suit for its recovery. She was nonsuited at the trial, and the nonsuit was sustained at general term, on the ground that there was no sufficient delivery. The court of appeals reversed, and ordered a new trial, holding the delivery sufficient. To the same effect are: Penfield v. Public Administrator (2 E. D. S. 305); Grangiac v. Arden (10 Johns. 293); Mack v. Mack (3 Hun, 323); Stevens v. Stevens (2 Hun, 470); Cooper v. Burr (45 Barb. 9, 33); Trow v. Shannon (78 N. Y. 446). The case of Brewer v. Harvey (72 N. C. 177), relied on by the appellant, is in conflict with the current of authority in this State.
The plaintiff’s title to the property in suit, was, then, entirely valid unless the gift was made in fraud of creditors. The defendant was not a creditor at the time the gift was made, and there was no attempt on the trial to prove that the plaintiff’s husband was insolvent at the time he made the gift, or has become so since. •
*113 As the lien which the defendant asserts is purely .statutory, it was for him to comply with all the conditions precedent which the statute requires ; and if he wishes to assert that statutory right, the duty was upon him to ascertain who was the real owner of the property, and serve notice of his lien upon that person. The plaintiff was undoubtedly bound by the acts of her husband as her agent. Had the notice of lien been -served upon her, and had the lien under the circumstances of this case been a valid one (as to which we express no opinion), his statutory rights would have been perfectly protected. As the notice was directed to, and served upon, a person who was not the owner, it was a nullity as against the person who was.
The other exceptions do not demand discussion.
The exceptions should be overruled and judgment ordered for plaintiff on the verdict, with costs.
Freedman, J., concurred.