### KAY v. KAY.

Common Pleas Court, Cuyahoga County.

No. 590862.   Decided May 6, 1953.

Wilbur H. Brewer, Cleveland, for plaintiff.
Richard B. Kay, Cleveland, for defendant.

## OPINION

By LYBARGER, J.

On June 9, 1949 this Court granted a decree of divorce to Dorothy Kay, dissolving her marriage to Norman B. Kay on the ground of gross neglect of duty. The Court granted sole custody and control of the minor child of the parties, Bruce S. Kay (born July 4, 1946), to the mother, Dorothy Kay, and ordered the defendant to pay $60 per month for the support of said minor, granting the father the right of reasonable visitation. Subsequently Dorothy Kay was married to Robert D. Crawford and took up residence in Avon Lake, Lorain County, Ohio. Norman B. Kay located in California, where he now resides, and usually returns to the Cleveland area on vacation for several weeks once a year. The child's paternal grandparents reside in Lakewood, Ohio. In the fall of 1952 the child was entered in the public school where he resides as "Bruce S. Crawford."

January 7, 1953 there was filed on behalf of the defendant Norman B. Kay a motion asking the Court to modify its decree of June 9, 1949 in the following respects:

"1. That the court modify its decree and to enter upon its journal, to allow a reasonable visitation by the paternal grandparents of Bruce S. Kay, the son of the parties hereto.

"2. That the court modify and enter on its journal, an order that the said minor child, Bruce S. Kay, shall at all times for all intents and purposes retain the name of Bruce S. Kay, the son of the defendant herein."

This motion was heard in full and overruled on January 15, 1953. Subsequently the defendant moved for a rehearing which was granted and had on February 20; 1953. Briefs were then submitted, and the motion to modify is now before the court for decision.

### The Right of Visitation

The only section of the Ohio Code which bears upon the legal right of visitation is a portion of §8005-5 GC which says:

"The court * * * may make any just and reasonable order or decree permitting the parent who is deprived of the care,

custody, and control of the children to visit them at such time and under such conditions as the court may direct."

Clearly, this section does not apply to others than parents. But aside from statutory law, a court in dealing with contraverted rights incident to the custody of a minor child may exercise broad discretion, having in mind the welfare of the child as the first consideration. There can be no doubt that a court may, when propriety or necessity dictate, grant the privilege of visitation to grandparents, just as it may grant custody to a grandparent or some outsider if neither of the child's parents is a suitable person for such purpose. However, the granting of a right of visitation to others than a parent should be done only after a showing that the welfare of the child either demands it or will not be adversely affected by it.

The defendant in the instant case contends that the plaintiff had agreed to give "the grandparents the right of reasonable visitation since the legal father was now living in California." It is the law that the court "in adjudicating upon the custody and control of minor children, in an action for divorce, either originally or upon an application to modify an original order or decree, is in no way bound by an agreement of the parties to the action." **14 O. Jur., p. 550-51.**

Also, it has been held that "the obligation of a parent to permit a child to visit its grandparents is only a moral, not a legal duty." 39 Am. Jur. 602.

The Court observes that in the original copy of the divorce decree of June 9, 1949 there was written in ink this clause:

"and paternal grandparents have right to visit child at reasonable times."

But before the decree was signed, this clause was deleted (by heavy lines drawn through it), either by one or both of the parties or the judge who heard the case. It therefore was not a part of the Court's decree.

There is no testimony but that the paternal grandparents are fine, reputable persons who are deeply interested in their grandchild. The mother's testimony, however, was that the child came home from weekend visits to the grandparents confused and disturbed, and that such visits created difficulties, emotional conflicts and disciplinary problems which were not good for the child. The testimony indicated strained relations existing between the families. The defendant offered no evidence of any need or demand for the right of visitation sought.

All things considered, the Court is convinced that it would not be to the best interests of the child to order that the

grandparents have the **right** of visitation, and therefore overrules this part of the defendant's motion.

May a parent having custody, change a minor child's surname?

The second request of the defendant's motion presents for decision a question which has rarely been dealt with in any reported cases, namely, whether or not a parent who has been granted custody of a minor child of tender years may, in the face of opposition by the other spouse, and in the absence of a statute on the subject, change the family name of a child.

The statutes of Ohio do not say what shall be considered a person's name. It has been defined as "one or more words used to distinguish an individual." Donaldson v. Donaldson, 1 Ohio Dec. 289. One's name usually consists of at least a given or first name and a surname or family name which, merely as a matter of custom in some countries, ours included, is passed along from the father to his children. When his daughters marry by custom each assumes the surname of her husband.

Going a step farther, it has been said:

"It is merely a custom for persons to bear the name of their parents; hence, in the absence of a statute or judicial adjudication to the contrary, there is nothing in the law prohibiting a person from taking or assuming another name, so long as he does not assume the name for the purpose of defrauding other persons through a mistake of identity." 38 Am. Jur. pg. 600 (Names Sec. 11).

**Sec. 12209 GC** provides a means by which a person may effect a change of name by action of a court of record. Now a statute such as this is in affirmance and aid of the common law practice as to change of name and does not abrogate it. 19 R. C. L. 1332. The Supreme Court of Ohio has held:

"It is universally recognized that a person may adopt any name he may choose so long as such change is not * * * for fraudulent purposes.

"On this subject 38 American Jurisprudence, 610, Section 28, states: 'In the absence of a statute to the contrary, a person may ordinarily change his name at will, without any legal proceedings, merely by adopting another name. He may not do so, however, for fraudulent purposes. * * *'" **Pierce v. Brushart, 153 Oh St 372, 377, 92 N. E. 2d 4, 8.**

It is clear, therefore, that in Ohio a person may change his name either by resorting to a court proceeding or by favor of the common law method of merely adopting a new name or a different spelling of his old name. This is frequently

done, the common practice being to Anglicize a name which is hard to spell or pronounce by dropping part of it, rearranging its spelling or translating it completely into its English equivalent.

It should also be observed that in 1921 the attorney general in a well considered opinion reviewed the law as to names. See 1921 O. A. G. p. 572.

Sec. 8004-1 et seq., GC, deal with the adoption of an infant and the change of name incident thereto. Now the Court is of the opinion that neither the statute as to change of name nor those as to adoption have any bearing on the instant case. No court action looking to a legal change of the child's name has been filed, and of course no attempt at adoption is being made. The Court cannot do as defendant suggests, namely, say that since a change of name is involved by analogy the requirements of the adoption statutes must be met. Ohio has not enacted any law specifically regulating a change of name for a minor, as some jurisdictions have done, notably New York. See Civil Rights Law, 8 McKinney's Consolidated Laws of New York, c. 6, §§60, 62.

A lower court decision in New York, interpreting the statute there in effect, had this to say:

"* * * the statutory provision for change of name, Civil Rights Law, §60, provides:

" 'That if the infant is under 16 years of age the petition may be made by both his parents, if living, or by one parent only, if one be dead.'

"This has been construed to mean that the consent of both parents is necessary." Schoenberg v. Schoenberg, Sup., 57 N. Y. S. 2d 283.

The defendant has cited the case of Application of Ebenstein, Sup., 85 N. Y. S. 2d 261, which is authority for this proposition (Syllabus 2).

"An application by divorced husband for an order directing divorced wife * * * from imposing upon child under sixteen years of age who was issue of marriage of the parties her mother's maiden name or any other than her rightful name was properly the subject matter of a 'special proceeding,' within jurisdiction of Special term. Civil Rights Law, §60."

This and a number of other decisions of New York courts were rendered in actions brought under the statute to seek a change of name for a minor. In some cases the request was denied and in others granted. See Application of Wittlin, City Ct., 61 N. Y. S. 2d 726: Application of Harris, Sup., 43 N. Y. S. 2d 521. Those courts, however, were not dealing with the situation presented by the instant case.

The Court, therefore, must fall back on general principles, the most important of which is that in any proceeding as to the care, custody or control of a child the court's concern must be for the welfare of the child—its present welfare and its welfare in the coming years. All too frequently divorced parents, in their antipathy for one another, resort to a bitter cross fire that catches an innocent child in the middle. Courts then must endeavor to shield the child from the misdirected darts of those who profess to love it, while trying hard to hurt its mother and its father.

Apparently the reported case in Ohio which comes closest to paralleling the situation now before the Court is that of **Bilenkin v. Bilenkin, 78 Oh Ap 481**, 64 N. E. 2d 84, decided by the Court of Appeals of Montgomery County in 1945. The defendant (father of a child in the custody of the divorced wife) was in arrears for support, and the plaintiff sought an order finding him in contempt. Defendant did not deny the charge of contempt but filed two motions, (1) to vacate the support order because the plaintiff had "deliberately changed the name of Barbara Bilenkin to Barbara Salesky;" and (2) to restrain the plaintiff "from registering the child as Barbara Salesky either in the school, Sunday school, or any other place." The lower court overruled both of defendant's motions.

On appeal the court held that the defendant's motion to vacate was no defense to a contempt charge for failure to support, even though the wife had changed the child's name.

The syllabus (2) reads:

"In such case, the divorced wife may not change the surname of the child by registering him in schools and other places under a different surname, but where such practice has been carried on from the time the wife, the child and the second husband moved to a residence hundreds of miles from that of the divorced husband and it does not reasonably appear that he will be materially affected by such change of name, the failure of the court to restrain such practice is not prejudicial."

By way of dicta the court says, **78 Oh Ap**, on **page 484-485**, 64 N. E. 2d on page 85:

"The second motion sought an order restraining the plaintiff from using the name of Barbara Salesky for Barbara Bilenkin, the child of the parties. **The plaintiff, nor her husband, may not accomplish a change in the name of the child by [her or his] acts in registering [such child] in school,** Sunday school and other places as Barbara Salesky. Under the facts appearing we may not hold that the Court committed prejudicial error in refusing to grant the relief sought.

"Judge Nicholas in his written opinion which we have before us gives sufficient reasons, in our judgment, to support his refusal to compel the plaintiff to carry the child's name as Barbara Bilenkin in school, Sunday school and other places. The trial judge points out that this practice of registering the minor daughter of the parties in the name of Salesky had been followed from the time that the plaintiff had moved with her husband to their present residence. The home of the child is hundreds of miles removed from that of her father and it does not reasonably appear that he will be materially affected, one way or the other, by reason of the fact that his child * * * carries the name of Salesky. On the other hand, it may be very embarrassing and the source of some humiliation to the daughter if at this time the plaintiff should be required to no longer carry the daughter's name as heretofore known among her associates. **Had the request been made of the Court when the facts first came to the attention of the defendant, it would present a different and more difficult question.** The ruling on the motion, when made, was not prejudicially erroneous."

This Court conceives the law to be that there is no hard and fast rule governing the change of a child's name under circumstances such as those in the case. There are times when an informal change to the surname of the mother's second husband may be desirable, as when the child's father indulges in improper conduct, fails to support, abandons the child, is presently, and in the past has been, indifferent to its welfare, and does not raise a timely objection to the change of name. On the other hand when the father is supporting the child, manifests an abiding interest in the child, and, without delay, by a proper pleading in court objects to a change of name, then the court must decide the issue with a view to what is the best interest of the child.

While the following statement of the law presupposes the filing of an application for change of a child's name, and cites as authority several cases from states having statutes on the subject, still the general principles set forth are sound and may be applied to a situation such as in the instant case:

"An application to change the name of an infant should be granted only where to do so is clearly in the best interest of the child. Ordinarily a change of the name of a minor child of divorced parents should not be granted where it might contribute to the estrangement of the child from its father who has shown a desire to preserve the parental relationship, but such an application has been granted where the father is shown to have been indifferent to the son's material welfare

over a period of years and he is, in reality, a stranger and unknown to him." 65 C. J. S., Names, §11, page 21.

See also Rounick's Petition, 47 Pa. Dist. & Co. R. 71.

Applying the above principles to the facts in this case, as brought out by the testimony, the court concludes that the welfare of the child at this time does not call for a change of name from that of his father to the surname of the mother's second husband in whose home the child is now being raised. He is too young to be capable of making a choice of name for himself. At the age of seven years, or in his youth, he is not likely to be embarrassed or bothered by the fact that his name is different from that of his mother and her husband. While he has been entered in school for one year under the surname "Crawford," if he resumes his father's name "Kay" at the beginning of the next school year the change will hardly be noticed and should cause no long-lasting confusion. If right attitudes are suggested by adults, and no stumbling blocks are placed in its way by those about them, a child develops normally and free from frustrations. So it should be on both sides of this child's family.

The child's father, while far removed from physical contact with his son because of his employment, is supporting the child regularly. There is no testimony that he is not interested in the child or that he does not have paternal affection for him. He has professed a strong desire to have the child bear his name, and without undue delay after the child had been registered in school under a different name he raised objection in this court.

From time immemorial it has been the custom for male children to bear the family name of their father throughout life. The paternity of a child cannot be changed. Under the circumstances here presented the Court cannot say that the name of the child should be changed. If, when the boy fully appreciates the circumstances and is capable of selecting a name for himself, he chooses to bear the surname of someone other than his father, he may do so. The Court is convinced that in the meantime it would not contribute to the boy's welfare to permit interference with the usual custom of succession to the paternal surname, or to foster any unnatural barrier between the father and son.

The Court grants the second part of defendant's motion and orders that the decree of June 9, 1949 be modified to provide that the minor child Bruce S. Kay shall at all times for all intents and purposes, and after June 15, 1953, retain his father's surname and be known as Bruce S. Kay. Plaintiff excepts.