In the Matter of JANE OTIS, as Mother and Natural Guardian of ROBERT E. WEISS, an Infant, Petitioner. BERNARD WEISS, Respondent.

Supreme Court, Nassau County, January 7, 1954.

*Sidney Naishtat* for petitioner.

*Charles S. Belden* and *Arthur F. X. Henriksen* for respondent.

FRANCIS G. HOOLEY, Official Referee. This is a proceeding in which the petitioner seeks to change the surname of an eleven-year-old infant from that of his father to that of his stepfather. By an order of the Supreme Court duly made on the 16th day of October, 1953, the application of the petitioner herein for leave to change the name of said infant, Robert Emmet Weiss, to Robert Emmet Otis, was referred to the undersigned Official Referee to take testimony, and to hear and determine whether it is to the best interest of the infant herein to be given leave to assume the name of Robert Emmet Otis.

The testimony of the parties has been duly taken by the Official Referee and the court finds the following facts:

This application is made by Jane Otis, mother and natural guardian of Robert Emmet Weiss, an infant under the age of fourteen years, for leave to change his name to Robert Emmet Otis. Jane Otis and Bernard Weiss were married on April 20, 1941. The child, Robert Emmet Weiss, was born on April 27, 1942, and at the present time is of the age of eleven years. In the early part of 1953, the applicant, Jane Otis, then known as Jane Weiss, commenced an action for divorce in the State of New York. The action was not contested by the husband, Bernard Weiss. On or about the 24th day of April, 1953, a divorce was duly granted in the Supreme Court of the State of New York divorcing the said Jane Otis, then known as Jane Weiss, from the said Bernard Weiss. The decree of divorce

provided that the custody of the son of the marriage, to wit, Robert Emmet Weiss, be granted to the said Jane Weiss.

Thereafter, on June 28, 1953, the said Jane Otis, then known as Jane Weiss, married Bertram A. Otis, and since that date the petitioner and the child have been residing with the said Bertram A. Otis at No. 93 Circle Drive, Hicksville, Nassau County, New York. The said infant, Robert Emmet Weiss, entered school at Hicksville for the first time in the September term of 1953.

The decree of divorce between Jane Otis, then known as Jane Weiss, and Bernard Weiss, provided for payment of $15 per week for the support and maintenance of the infant, Robert Emmet Weiss. The father of said infant, Bernard Weiss, has paid in full this sum and is willing to continue to pay it. There was a period when he was in default in the payment of this amount, but the father admits he was foolish in resisting payments and has since cleared up all arrears.

The new husband of the applicant, Bertram A. Otis, was formerly married and divorced and is the father of a grown child.

The grounds of the application as stated in the petition are, generally, that, since moving to Hicksville on June 28, 1953, the only member of the applicant's household whose name is not Otis is the petitioner's son, Robert Emmet Weiss, and that this has caused said infant embarrassment and distress in that when bringing friends into the house or when speaking of his family he is required to introduce his parents by a surname other than his, and that it is also somewhat embarrassing for petitioner to have to explain to her new neighbors that her son's name differs from her present surname. The petition also maintains that the infant, Robert Emmet Weiss, has developed a love and affinity for petitioner's husband, Bertram A. Otis, and the petitioner further alleges that it is desirable and proper that a change of surname from Weiss to Otis be made in order that all the records in the school which the infant attends be in his assumed name. The applicant further maintains, and it is a fact, that her husband, Bertram A. Otis, would adopt the infant as his own. The petition sets forth, however, that the petitioner was not willing to have the said Bertram A. Otis adopt the child inasmuch as she did not wish to thereby cut off from the infant's support and maintenance the $15 a week payments being made by the father, Bernard Weiss.

The father, Bernard Weiss, testified that he loves his son; that he is not willing to relieve himself from the payment of

$15 per week by consenting to the adoption of the child by the said Bertram Otis; that he has plans to send his son to college when the time therefor arrives. The father, Bernard Weiss, concedes that the said Bertram Otis has been kind and considerate to Robert, the infant. The son, Robert Emmet Weiss, loves his father, Bernard Weiss, and his stepfather, Bertram Otis.

Prior to the enactment of the amendment to section 60 of the Civil Rights Law, in effect April 13, 1953, that section provided that if an infant be under sixteen years of age the petition to change his name might be made by both the parents, if living, or by one parent only if one is dead, unless some other person shall be the general guardian or guardian of the person of such infant. This has been construed to mean that both parents should join in making a petition for the change of name of an infant under sixteen years of age when both parents are living. In the amendment to said section 60, made in 1953, the section was amended so as to provide: "The petition to change the name of an infant may be made by the infant through his next friend, or by either of his parents, or by his general guardian, or by the guardian of his person." Section 62 of said Civil Rights Law now requires that if the petition be made by one of the parents a notice of the application must be served upon the other parent. No change has been made in section 63 affecting this application, and the question before the court is whether the interest of the infant will be substantially promoted by the change. It has been the general rule prior to the amendment of 1953, that the name of an infant under sixteen years of age could not be changed unless both parties consented. This was a hardship, especially where, for example, one of the parents abandoned the other and took no interest in the infant, and in some cases a father failed to support the infant, and yet the consent of the uninterested parent was requisite to a change of name. That consent was arbitrarily refused in many instances. Where an abandonment had taken place it was often impossible to locate one of the parents. It was no doubt for these reasons that the 1953 amendment was enacted.

In *Matter of Epstein* (121 Misc. 151), the application was made on behalf of a boy, five years of age, by his mother, for leave to change the infant's name, she having obtained a divorce from the father in the State of Nevada on the grounds of desertion and having since remarried. The mother sought to have the surname of her present husband given to the child. The father opposed such application. The reasons given by the mother

for the application were: (1) That the change would tend to endear the child to the present husband of the mother, with whom he was now living; (2) that because her present husband and other members of her family were successful business people the child would benefit from the prestige of their name, and (3) that it would avoid the confusion that would result in school from the fact that the child's name and that of the mother were different. The court said the first reason ascribed was purely one of sentiment and, therefore, did not support the application. In addition, the court stated that it knew of no reason why the child should be endeared to another in preference to his natural father, and that the third reason ascribed appeared to be one of convenience to the mother rather than the child and was wholly insufficient. The court said (p. 152): "The child should and in the course of time must know of his parentage. If, when he fully appreciates the circumstances and is capable of selecting a name for himself, he chooses to select the surname of the man termed in the petition as his ' stepfather ', he may do so. *Smith* v. *United States Casualty Co.*, 197 N. Y. 420. Until then the court will not and should not endeavor to interfere with the usual custom of succession to paternal surname nor foster any unnatural barrier between the father and son."

In *Matter of Cohn* (181 Misc. 1021), where petitioner sought to compel his former wife to undo change of surname of the children of petitioner and respondent, the court said: "They (i.e., the children) remain members of the father's family. That status has been in no wise altered, and, in the circumstances here disclosed, remains paramount to any exercise of discretion in favor of respondent. Until the children are themselves competent to make a choice, reasons far more compelling than any here shown would be required to justify departure from the customary use of the paternal surname."

The writer of this memorandum wrote the decision in *Matter of Horn* (21 N. Y. S. 2d 453), and granted permission for a change of name where the father objected, but the compelling reason in that case was that the son joined in the petition. He was of the age of sixteen years. He had not seen his father more than a few times since he was three years old, and he recited his father's lack of interest in him during that time.

There is nothing in the present application to justify the exercise of the court's discretion in the interest of the petitioner herein. Here a father is supporting his child. The court believes that he has love and affection for his son. He sees his son often. He has plans for son's college education in the future.

By reason of his misconduct this father has lost in large part the society and companionship of his son whom he loves and supports. It is now proposed to take from him against his consent the right to have his own flesh and blood bear his name during childhood in accordance with the agelong custom. I do not deem it for the best interest of this infant to grant this application.

It is not the law in a case such as this that the application for the change of name should be granted. If it were, there is hardly a divorce or separation case in the future in which the wife might not procure a change of names of the children whose custody is awarded to her without the consent of the other party upon the mere basis of the fact that the children like their stepfather and that in school and social activities their names will be the same as those with whom they live. I am unwilling to chart out a course which would set a precedent for any such drastic and extreme result.

The application is denied. Settle order on notice.