Marguerite M. REED (Baldwin) and Galen L. Baldwin, Plaintiffs in Error,

v.

Guy Dean REED, Sr., Defendant in Error.

No. 38101.

Supreme Court of Oklahoma.

April 14, 1959.

G. Douglas Fox, for Gable, Gotwals & Hays, Tulsa, for plaintiffs in error.

S. M. Rutherford, Tulsa, for defendant in error.

IRWIN, Justice.

On December 10, 1947, Marguerite M. Reed as plaintiff was granted a divorce from the defendant Guy Dean Reed, Sr. The custody of minor child, Guy Dean Reed, Jr., was awarded to the plaintiff with right of visitation granted the defendant. On August 16, 1957, the defendant filed a motion in the original proceeding in which he alleged the plaintiff and her second husband Dr. Galen L. Baldwin, required the minor child to assume the surname of Baldwin and that the plaintiff and her second husband were pursuing a course of conduct the ultimate effect of which has been to alienate the affections of the child from his natural father. Defendant prayed that Dr. Baldwin be made a party defendant and that on the final hearing an order be entered permanently enjoining and restraining plaintiff and Dr. Baldwin from so conducting themselves in the care and custody of the minor child. Dr. Galen L. Baldwin was joined as a party defendant and all three appeared and participated in the hearing and will be referred to by name.

The court found the issues in favor of Dr. Guy Dean Reed and permanently enjoined and restrained Dr. and Mrs. Baldwin from imposing upon the minor child the surname Baldwin or encouraging its use or identifying said minor as Guy Dean Baldwin; and permanently enjoined and restrained them from conducting themselves directly or indirectly, in any manner which would cause the alienation of the affection and respect of said minor child for

its natural father, Dr. Reed. The Baldwins have perfected this appeal.

The evidence discloses that Mrs. Reed and Dr. Baldwin were married September 4, 1948, when the child was less than two years old; that the child has been raised in the home of the Baldwins and that they have two other children, both boys, born of their marriage and have all lived as one family and the child has gone under the name of Baldwin since entering kindergarten. That after the divorce in 1947, Dr. Reed completed his studies and his internship as an Osteopathic physician and had practiced for six years in the State of Ohio. That during the summer before the child entered the first grade in Tulsa, Dr. Reed visited Tulsa, and Mrs. Baldwin told him the child was going under the name of Baldwin. That Dr. Reed visited the child at intervals, even though he was living in Ohio, but since his return to Tulsa to practice his profession in September, 1956, he has visited his son on an average of once a week. That the relationship between the three adults had been very friendly and there had been no disharmony between them until the dissension arose as to the child's going under the name of Baldwin, and this dessension came to a head apparently in June, 1957, when the child was sent to summer camp.

We approve the procedure followed by Dr. Reed in filing his motion in the original divorce action. We have repeatedly held that a trial court is vested with continuing jurisdiction concerning the custody and welfare of a minor child when a decree of divorce has been granted. In Morgan v. Morgan, Okl., 268 P.2d 855, 857, we said:

"It stands without argument that a trial court is vested with continuing jurisdiction concerning the custody and welfare of a minor child in a divorce action."

The identical question was presented to, and approved by the Appellate Court of Illinois in the case of Solomon v. Solomon, 5 Ill.App.2d 297, 125 N.E.2d 675.

The Baldwins take the position that it is much better for the child, living in the home with them, as a member of the family, to carry the name of Baldwin and in that way, the child will not be embarrassed around his playmates and school mates. That to carry the name of Baldwin, the child is not constantly reminded that he is from a broken home, thus giving him a complex, but by using the name of Baldwin, he will be better off and not subject to questioning and possible childish ridicule from his playmates about being the child of divorced parents and that it is better for all concerned that the child go by the name of Baldwin.

They contend, under the evidence and circumstances in this case, that Dr. Reed has no legally protectible right under the statutes or common law of Oklahoma and that the name of the child can be changed without the consent of the father.

In view of the father and son relationship existing between Dr. Reed and his son and the relationship between the Baldwins and the child, the final determination herein must be on consideration of what, under all the circumstances, is best for the child, coupled with the rights of the parties as such rights refer to and have a direct bearing on the best interest of the child.

It appears the Baldwins have furnished the child with the proper kind of a home; they have furnished him with all the necessities of life and many luxuries; that they have showered him with affection and made no distinction between the child and his two half-brothers; they have tended him through his childhood diseases and given him the safeguards of a family entire within itself and without the stigma of a broken home and have given him every protection possible to make him feel safe and secure in the family relationship.

On the other hand, the record reveals Dr. Reed, the natural father, has conducted himself in a proper manner and has maintained throughout the entire time a fatherly interest in and relationship to the child. Even when he was finishing his education

and internship as an Osteopath, and while he was practicing in Ohio, he visited the child whenever possible, kept in touch with him through the Baldwins, sent presents and paid more than required by the order of the trial court and in 1957 helped finance the expenses of the child at a summer camp.

Prior to the change of name act of 1953, 12 O.S.Supp. § 1631 et seq., Oklahoma had no statutory provisions and there are no Oklahoma decisions concerning the change of name. This being a case of first impression, we will look to other states for judicial light. The Supreme Court of Georgia approved a change of name in the case of Binford v. Reid, 83 Ga.App. 280, 63 S.E.2d 345, where the children had been enrolled in school under the name of the stepfather and were known to their playmates under the stepfather's name. In Bilenkin v. Bilenkin, 78 Ohio App. 481, 64 N.E.2d 84, while the Court approved the change of name, it also stated that if the father had made complaint when the change of name was first called to his attention, a different and more difficult question would have been presented. And while the Supreme Court of Arkansas in the case of Clinton v. Morrow, 220 Ark. 377, 247 S.W. 2d 1015, 1018, approved the change of name, the court stated that the question of the right and propriety of the children using the name of the stepfather is one that rests in the sound discretion of the court and further said with reference to the discretion of the court:

"* * * In view of the natural and commendable desire of the father to have his children bear and perpetuate his name, this discretion should be exercised with the utmost caution and such use or change should not be sanctioned unless it is for the best interest of the children. * * *"

However, in the case of Mark v. Kahn, 333 Mass. 517, 131 N.E.2d 758, 762, 53 A.L.R.2d 908, the court in refusing to change the name of the minor children said:

"* * * A change of name may not be in the child's best interest if the ef-

fect of such change is to contribute to the further estrangement of the child from a father who exhibits a desire to preserve the parental relationship. * * *"

and in the case of Kay v. Kay, Ohio Com. Pl., 112 N.E.2d 562, 567, the court in refusing to change the name of the minor child said:

"Ordinarily a change of the name of a minor child of divorced parents should not be granted where it might contribute to the estrangement of the child from its father who has shown a desire to preserve the parental relationship, but such an application has been granted where the father is shown to have been indifferent to the son's material welfare over a period of years and he is, in reality, a stranger and unknown to him."

Dr. Reed has generously contributed to the support of the child, has exhibited a desire to preserve the parental relationship, has visited the child, had the child within him and has certainly been interested in his progress. This being an action of equitable nature and the court having heard the testimony and finding for Dr. Reed, the judgment of the trial court enjoining the changing of the name will not be disturbed on appeal, unless against the clear weight of evidence. In re Fletcher's Estate, Okl., 269 P.2d 349. From an examination of the entire record, the judgment of the trial court is not against the clear weight of evidence.

The Baldwins also assert that the name of the child was changed prior to the change of name act, Title 12 O.S.Supp. 1953 § 1631, et seq., and having been changed before the effective date of the act in 1953, his "legal" name was Baldwin at the time of the institution of this action. We cannot sustain this assertion. At the time of the enactment of said act, supra, the child was approximately six years old, and was not of an age to understand or know the seriousness of changing his name and was not competent to express an opinion thereon. The only theory of the Bald-

wins along this line is that the mother, in her capacity as a custodian of the child and her duty to see to the temporal, mental and moral welfare of the child had the right to dictate that the name of the child should be changed. This, she did not have the right to do except and unless she first took the matter up with Dr. Reed and obtained his consent to such change and filed an application setting up the grounds under which she felt a change of name was justified and the consent thereto of the father. The courts, as we have hereto said, have continuing jurisdiction as to the care, custody and well being of the minor children of divorced parents. In a matter of such importance, it is obligatory on the parents that they act in concert and for the best interest of the child, and the right to change the name of a child is not given to one parent, especially where the one out of custody with only the right of visitation, is contributing generously to the support and maintenance of the child and is trying to maintain the parental relationship. In re Cohn, 181 Misc. 1021, 50 N.Y.S.2d 278, the court said:

"A wife has no right, as incident to her general guardianship of her infant children, by former husband, to adopt her present husband's surname as that of children who remain members of their father's family."

In the body of the opinion it is stated:

"The contention that the selection of a name for these infants is but an incident to her general guardianship, which thus gives her freedom of action in the matter, is wholly unsound."

Although the child was going by the name Baldwin prior to and at the time of the enactment of the change of name act, we hold the child's name, under the circumstances in this case could not have been changed without the consent of the father and the Baldwins' contention is without merit.

█ The Baldwins also raise the question of laches in that Dr. Reed should have taken action when he first learned the child was using the surname Baldwin. While it is true it would have been better for Dr. Reed to have started his action sooner, we cannot say that he waited too long. The child was assuming the name of Baldwin in 1951 for certain, and possibly before then. Dr. Reed did not learn of this until he visited in Tulsa the following summer. He was then living in Ohio, and it may not have been feasible for him to take the time from his practice at that particular time to start the action. We do not know on what theory the trial judge held against the Baldwins on this particular question, but we do know it was raised and argued and the trial judge found in favor of Dr. Reed.

We have repeatedly held that the paramount consideration of the court in matters involving the minor children of divorced parents is the best interest of the children and where it does not appear that the trial court has abused its discretion this court will not reverse its judgment. Bowring v. Bowring, 196 Okl. 520, 166 P.2d 415. We find the trial court in the disposition of this matter did not abuse its discretion as to the name of the child.

█ In addition to the restraining order enjoining the Baldwins from changing the name, it enjoined them from conducting themselves in any manner in their care and custody of the child which would alienate the affection and respect for Dr. Reed. As we have heretofore said the Baldwins and Dr. Reed are highly respected, intelligent people who have cooperated to the fullest extent as to the welfare of the child with the one exception. From an examination of the entire record, it is clearly against the weight of evidence that there was any disposition on the part of the Baldwins to alienate the affection and respect of the child for its natural father, other than their desire to change the child's name, and that part of the judgment should be reversed.

█ In an action of equitable cognizance this court will examine the entire record and weigh the evidence, and will reverse the judgment of the trial court if found to be against the clear weight of the evidence or is contrary to established principles of

equity. Rees v. Briscoe, Okl., 315 P.2d 758.

That portion of the judgment of the trial court restraining and enjoining the Baldwins from imposing upon the child the surname of Baldwin, or encouraging said child to so identify himself to anyone, his friends, associates or the public, or identifying said child to anyone, their friends, associates or the public in general as Guy Dean Baldwin, is affirmed.

That portion of the judgment permanently enjoining and restraining the Baldwins directly or indirectly from conducting themselves in any manner in the care and custody of the child which would cause alienation of the affection and respect of said child for Dr. Reed is reversed and the trial judge is hereby directed to delete all reference to future alienation of the affection and respect of said child to Dr. Reed from the judgment and order. This is not to say that the Baldwins may or have any right to alienate the affection and respect of the child for its father; but what we hold is, that there is no proof that they have done so.

Affirmed in part, reversed in part.