Robert C. Degerberg,
Plaintiff,

*vs.*

Patricia K. McCormick and Willis J. McCormick,
Defendants.

*New Castle, January 16, 1963.*

*Richard J. Abrams,* of Richards, Layton & Finger, Wilmington, for plaintiff.

*David Snellenberg, II,* and *Theodore F. Sandstrom,* of Killoran & VanBrunt, Wilmington, for defendants.

SHORT, Vice Chancellor: In this action plaintiff asks that the injunctive process of this court be invoked to enjoin defendant Patricia K. McCormick, and Willis J. McCormick, her present husband, from "using, encouraging or permitting the use of any surname with respect to the minor child, Nilsson E. Degerberg, except that of the minor child's natural father," the plaintiff. He also seeks an injunction to restrain the defendants from commencing any legal proceeding to change the name of said minor child until such time as the child shall have reached a sufficient age and maturity to exercise an intelligent and voluntary choice in the matter of his surname.

Defendant moved to dismiss the complaint on the ground that this court was without jurisdiction to award the relief prayed for.

The motion was denied.  See *Degerberg v. McCormick, 40 Del.Ch.* 471, 184 *A.2d* 468.  This is the decision after final hearing on the merits of the case.

The record establishes that plaintiff and defendant Patricia K. McCormick were married on July 27, 1950.  The minor child, Nilsson E. Degerberg was born of this marriage on August 15, 1954.  Plaintiff obtained a divorce from Patricia K. McCormick in the Court of Common Pleas, Montgomery County, Pennsylvania, in February, 1960.  By the decree of that court custody of the child was awarded to the defendant Patricia K. McCormick who has since married defendant Willis J. McCormick.  The testimony discloses frequent personal conflicts between the plaintiff and his former wife since their divorce.  Other courts have had occasion to attempt settlement of some of their difficulties.  Plaintiff has succeeded in gaining rather liberal visitation rights with respect to his son and has apparently taken full advantage of such rights.  It is admitted by the defendants that the child has a warm affection for his father and enjoys the periodic visits with him.

The circumstances giving rise to the present complaint are, in some respects, rather obscure.  However, it is apparent that at least on some occasions over a period of time the child has adopted the name of McCormick as his own surname.  The first definite indication of this conduct, as disclosed by the record, was on the occasion of his attendance at the first day of school in the year 1961.  At that time, though Mrs. McCormick had registered the child in school under the name of Degerberg, when the roll was called by the teacher assigned to his classroom Nilsson would not answer to that name.  Thereafter, there were discussions between Mrs. McCormick, the teacher, superintendent and the mother of a classmate as to the name by which the child was to be known among his teachers and schoolmates.  While these conversations do not indicate that Mrs. McCormick insisted that Nilsson be called by the surname McCormick, it is quite apparent that the use of the latter name as applied to the child was quite satisfactory and agreeable to her..

Plaintiff, apparently, first became aware of the child's use of the surname McCormick during a regular visit with him in the latter

part of 1961. At that time plaintiff advised Nilsson that his correct and legal surname was Degerberg and that he should cease using the name McCormick. That the child has continued to use the surname McCormick, at least as to certain of his activities, does not seem to be denied by the defendants. They take the position that the evidence does not affirmatively show that *they* have used the surname McCormick with respect to the child, or encouraged his use of that name. They, in effect, ask the court to assume that a child seven years of age would, without suggestion, suddenly adopt for himself a surname other than that by which he had theretofore been known and identified. The court is not that naive. Nor is the premise of defendants' argument a correct one. The record does affirmatively establish that the use of the surname McCormick by the child was a matter which was discussed in the McCormick household, and by Mrs. McCormick with the child himself. Moreover, the mother, when informed of the use of the McCormick surname by her son, indicated approval, and, on one occasion, requested a change of the child's surname on the school list. She explains this request as merely carrying out her son's wishes so that no confusion would result in the exchange of greeting cards between the child and his classmates, as had been the case on a previous occasion. The request itself was an act calculated to effect a change of surname, no matter how limited the purpose. Her explanation in no way alters the fact that it was she who made the request. The record establishes at the very least that defendants have encouraged and permitted the use by Nilsson of the surname McCormick. That the defendants have also used that surname in connection with the child is an inference that may be properly drawn from the evidence, if not thereby affirmatively indicated.

The right of one parent, against the objection of the other, to change the surname of a child has been the subject of frequent judicial consideration. The great majority of cases presenting the problem have arisen under change of name statutes, or as incidental to divorce proceedings. In a few cases the natural father has sought relief where the divorced mother has registered children in school under the surname of a stepfather. The decisions are annotated in 53 *A.L.R.2d* 914. As the annotator there observes, the courts have

generally considered the welfare of the child as the controlling consideration regardless of the manner in which the problem may arise. So, in the present case, the question to be considered is the best interest of the child. *Degerberg v. McCormick,* — *Del.Ch.* —, 184 *A.2d* 468.

In determining whether or not it is in the child's best interest to permit a change in his surname certain factors have been regarded by the courts as of prime importance. First of all, recognition is accorded to the usual custom of succession to the paternal surname, and, it is said, this succession is a matter in which the father, as well as the child, has an interest which is entitled to protection. *Re Epstein,* 121 *Misc.* 151, 200 *N.Y.S.* 897; *Re Larson,* 81 *Cal. App.2d* 258, 183 *P.2d* 688; *Kay v. Kay, Ohio Com.Pl.,* 112 *N.E.2d* 562. Secondly, the interest manifested by the father in the welfare of the child as evidenced by support, visitation and promptness of complaint as to the attempted change of name. *Kay v. Kay, supra.* Thirdly, the effect of a change of surname on the relationship between the father and his child. *Mark v. Kahn,* 333 *Mass.* 517, 131 *N.E.2d* 758, 53 *A.L.R.2d* 908; *Rounick's Petition,* 47 *Pa.Dist. & Co.* 71; *Kay v. Kay, supra.* Age of the child involved is, of course, material, as are any other circumstances reflecting upon welfare. The only other circumstance which defendants here point to is based upon certain testimony by Mrs. McCormick and the child's maternal grandmother of mistreatment of the child by his father. Misconduct by a father may, of course, be such as to justify a finding that he has forfeited his right to complain of a change of name of his child. *Kay v. Kay, supra; Sobel v. Sobel,* 46 *N.J.Super.* 284, 134 *A.2d* 598; *Mark v. Kahn, supra.* Whether or not plaintiff's conduct has been such will be hereafter considered.

In spite of defendants' protestations to the contrary, I am satisfied that plaintiff has substantially complied with his obligation to support the child. That he has exercised his rights of visitation to the utmost is asserted by the defendants themselves. Though defendants contend to the contrary, I think it clear that plaintiff's present objection was made without unreasonable delay. Compare, *Kay v. Kay, supra.* Thus, it would appear that plaintiff has manifested a continuing, fatherly interest in the welfare of his child.

Authority, both judicial and psychiatric, recognizes that a change of surname of a child of divorced parents may contribute to estrangement of the child from his father. So, in *Mark v. Kahn, supra,* the court said: "The bond between a father and his children in circumstances like the present is tenuous at best and if their name is changed that bond may be weakened if not destroyed." And, in *Re Epstein, supra,* it is said that the court should not "foster any unnatural barrier between the father and son." To the same effect, see *Application of Wittlin, City Ct.,* 61 *N.Y.S.2d* 726; *Rounick's Petition, supra; Kay v. Kay, supra.* The views expressed in these cases find support in the testimony of psychiatrists adduced in this case. In addition to being of the opinion that the attempted change of name has created "a wedge" in Nilsson's relationship with his father, these experts are decidedly of the belief that a continued use of the McCormick surname will have a serious, adverse effect upon the child's development in his formative years. Moreover, it is their opinion that the consequences of a change of name are deleterious to Nilsson's welfare regardless of the manner in which the change has been brought about, whether by the child on his own initiative, as suggested by defendants, or by the active means of his mother, as claimed by plaintiff. In their opinion, too, it is the mother's responsibility, in the interest of the child, to foster his use of his father's surname.

The child here involved is obviously incapable of making an intelligent choice of the surname by which he is to be known. By reason of his age and inexperience he cannot appreciate the consequences of a change in his name. *Kay v. Kay, supra; Mark v. Kahn, supra; Rounick's Petition, supra.* His best interest may not, therefore, be tested by his own desires. If, when the child becomes of an age to fully understand the significance of his paternal surname and the consequences of a change thereof, he chooses to adopt a surname other than that of his father, it is his privilege to do so. In the meantime he should not have foisted upon him a name which he may later reject. *Mark v. Kahn, supra.* Neither should he be permitted to make a choice for himself.

Defendants suggest that it would be embarrassing and humiliating to the child to require him "to carry the Degerberg surname among his friends at school, church and the neighborhood."

In the absence of such misconduct on the part of the father as to bring shame and disgrace upon the child, this defense has been consistently rejected by the courts. *Re Epstein, supra; Application of Wittlin, supra; Application of Otis,* 204 *Misc.* 1073, 126 *N.Y.S.2d* 651; *Pottish v. Pottish, Sup.,* 88 *N.Y.S.2d* 394; *Kay v. Kay, supra; Reed v. Reed (Okl.),* 338 *P.2d* 350; *Application of Simon,* 1 *Misc.* 2d 177, 148 *N.Y.S.2d* 14. So, also, has the argument that refusal to permit a change of name to coincide with other members of the stepfather's household would give the child a feeling of insecurity. *Application of Simon, supra; Nitzberg v. Board of Education,* 200 *Misc.* 748, 104 *N.Y.S.2d* 421.

■ Defendants contend that plaintiff has been guilty of such misconduct toward the child as to warrant a holding that he has forfeited the right to complain of a change of the child's surname. The testimony upon which they rely is largely of a hearsay nature, that is, statements by the mother based upon conversations with the child following periods of visitation with his father. They relate to threats by the father "to beat" the child if he used the name of McCormick, and attempts by the father to have the boy lie about certain of his activities at the father's residence. These complaints, in the circumstances appearing, do not establish the type of misconduct which the law recognizes as foreclosing a father from complaining of a change in his child's surname. As to the threats, plaintiff was justified in insisting that his son use the paternal surname, and in threatening to punish him if he adopted another. The testimony as to the father's attempts to persuade Nilsson to lie about certain activities is not convincing. Moreover, it is clear that the activities in which the father permitted the son to engage were the subject of constant dispute between the parents. These activities were of the sort which would ordinarily be regarded as proper and normal for a child of Nilsson's age. For reasons which are understandable, the mother was violently opposed to the child's engaging in such activities. In the circumstances, plaintiff's attempt, if any, to avoid further discord by suggesting to his son that he either not reveal the activities to his mother, or deny them if questioned by her, was not such misconduct as is sufficient to deny to plaintiff the right to main-

tain this action. Nor am I impressed by a statement attributed to plaintiff by the child's maternal grandmother to the effect that he didn't care what happened to the boy so long as he could hurt the mother. The truth of such a statement, in so far as it disclaims any interest in the boy, is refuted by plaintiff's conduct toward him.

Defendants also contend that the evidence fails to show that either the plaintiff or the child has suffered immediate, irreparable harm from the use of the McCormick surname. On the contrary, the psychiatric testimony affirmatively establishes immediate harm to the child which will be irreparable should the court decline to interfere.

■ Upon the record presented I am satisfied that the best interests of Nilsson will be served if he uses the surname of the family into which he was born. I have no doubt that Mrs. McCormick can smooth any waters that have been heretofore, or are now ruffled by the adoption by or for the child of the surname of his stepfather. Nilsson, according to the testimony is an intelligent boy. Little difficulty should be encountered in making him understand not only the necessity but the desirability of his using his father's surname. As the Ohio court observed in *Kay v. Kay, supra:* "If right attitudes are suggested by adults, and no stumbling blocks are placed in its way by those about them, a child develops normally and free from frustrations. So it should be on both sides of this child's family." It is to be hoped that the parents here will eventually come to realize that constant, or even periodic conflicts between themselves will affect Nilsson in his attempt to adapt himself to their two worlds, and that any efforts which they may make to settle their differences in a friendly manner will help their son to a better adjustment.

An injunction will issue enjoining the defendants from using, encouraging or permitting the use of any surname with respect to the minor child, Nilsson E. Degerberg, except that of the child's natural father. Since there is not now pending, or threatened any proceeding to change the name of said minor pursuant to the provisions of *Chapter 59, Title 10, Del.C.,* the prayer for an order en-

joining defendants from commencing any such legal proceeding is denied.

Order on notice.