2004 OK CIV APP 35

**In the Matter of the Application of Lana Renee STRATTON, by and Through Her Mother, Lisa KELLEY, to Change Her Name.**

and

**In the Matter of the Application of Cara Christine Stratton, by and Through Her Mother, Lisa Kelley, To Change Her Name.**

**G. Robinson Stratton III, Appellant,**

v.

**Lisa Kelley, Appellee.**

No. 98,919.

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 9, 2003.

Rehearing Denied Jan. 20, 2004.

Certiorari Denied March 29, 2004.

Patricia A. Kirch, Ardmore, OK, for Appellant.

Joseph K. Heselton, Jr., Jennifer H. Kirkpatrick, Phillips McFall McCaffrey, McVay & Murrah, P.C., Oklahoma City, OK, for Appellee.

Opinion by JERRY L. GOODMAN, Presiding Judge.

¶ 1 G. Robinson Stratton III (Father) appeals the trial court's January 29, 2003, order which granted his ex-wife Lisa Kelley's (Mother) petition to change the surname of Father's biological children from Stratton to that of Mother's new husband, Kelley. The trial court granted the name change over the objection of Father, whose non-custodial parental rights have not been terminated. Based upon our review of the facts and applicable law, we reverse.

## FACTS

¶ 2 The facts are undisputed. Father is the biological father of the minor children Lana and Cara Stratton (Children). Children were born in 1987 and 1990, respectively. Father was divorced from Mother in 1993, when Children were six and three. Mother was granted custody and Father was granted reasonable and seasonal visitation. Father is currently paying child support and daycare expenses, and providing health and life insurance benefits to Children, but has otherwise not significantly participated in the lives of Children for the last six years.[1] Mother remarried in 1994 and assumed her new husband's name, Kelley. It was not long before Children began using that sur-

---

1. For reasons set out elsewhere in this opinion, Father chose not to exercise any significant visitation or parental contact for the six years preceding filing of the petition for name change.

name as well. Children have used the Kelley surname since 1994, and are known by that name at church and school, and by their peers.

¶ 3 In 2001, the oldest child was denied a driving permit in the Kelley name because she was still legally named Stratton. On November 8, 2002, Children, by and through Mother, filed a petition to change Children's names from Stratton to Kelley, pursuant to the Oklahoma Change of Name Act, 12 O.S. 2001, §§ 1631 through 1637.[2] Father was asked to waive any objections to the name change, or agree to have his parental rights, and his financial obligations, terminated in order to facilitate Children's adoption by the stepfather. Father declined the request and filed an objection to the name change.

¶ 4 A hearing was held on January 29, 2002, attended by Father, Mother, and Children. No transcript of the proceedings was recorded, but a narrative statement in lieu of a transcript, executed by the trial judge, was filed April 9, 2003, pursuant to Okla.Sup.Ct. R.1.30, 12 O.S.2001, ch. 15 app. 1. The trial court granted the petition to change Children's names.[3] Father appeals.

## STANDARD OF REVIEW

¶ 5 The parties disagree on the standard of appellate review. Citing *Reed v. Reed,* 1959 OK 63, 338 P.2d 350, Mother contends a petition for name change is an equitable action and therefore the standard of review is whether the trial court's order is against the weight of the evidence. Father cites *In re Tubbs,* 1980 OK 177, 620 P.2d 384, and argues that because Children's continued use of his surname is a constitutionally protected interest, the standard of review for constitutional questions is de novo. While we agree a constitutionally protected interest is involved, thus entitling Father to due process and adequate notice, we conclude the

appropriate appellate standard of review in name change cases to be that set out in *Reed:*

> In an action of equitable cognizance this court will examine the entire record and weigh the evidence, and will reverse the judgment of the trial court if found to be against the clear weight of the evidence or is contrary to established principles of equity. ¶ 19, 338 P.2d at 354–55.

## ANALYSIS

¶ 6 The issue presented is: may a court order a child's name to be changed over the objection of the natural father, whose non-custodial parental rights have not been terminated? While we acknowledge a court may do so, in certain circumstances not present here, we hold the facts in the case before us do not support a name change.

¶ 7 Our research reveals few Oklahoma cases relevant to the facts and issue presented in this case. In *Reed v. Reed,* 1959 OK 63, 338 P.2d 350, the Oklahoma Supreme Court held the trial court did not err when it refused to permit the child's name to be changed over the objection of the natural father. The facts in *Reed* reflect that despite the divorce and his subsequent relocation out of state to attend medical school, the father remained close to his child, participated in the child's life as much as possible, and maintained good relations with the child's mother (his ex-wife), as well as with children's stepfather. Using the best interest test, the *Reed* Court held it was not an abuse of judicial discretion to deny the name change:

> In view of the father and son relationship existing between Dr. Reed and his son and the relationship between the Baldwins and the child, the final determination herein must be on consideration of what, under all the circumstances, is best for the child, coupled with the rights of the parties as

---

**2.** Title 12 O.S.2001, § 1631 provides:

Any natural person, who has been domiciled in this state or who has been residing upon any military reservation located in said state, for more than thirty (30) days, and has been an actual resident of the county or such military reservation situated in said county, or county in which the military reservation is situated, for more than thirty (30) days, next preceding

the filing of the action, may petition for a change of name in a civil action in the district court. If the person be a minor, the action may be brought by guardian or next friend as in other actions.

**3.** Father also requested a change of visitation. This was denied by the trial court, but is not an issue on appeal.

such rights refer to and have a direct bearing on the best interest of the child.

. . . .

Dr. Reed has generously contributed to the support of the child, has exhibited a desire to preserve the parental relationship, has visited the child, had the child within [*sic*] him and has certainly been interested in his progress. This being an action of equitable nature and the court having heard the testimony and finding for Dr. Reed, the judgment of the trial court enjoining the changing of the name will not be disturbed on appeal, unless against the clear weight of evidence. *In re Fletcher's Estate, Okl.*, 269 P.2d 349. From an examination of the entire record, the judgment of the trial court is not against the clear weight of evidence. *Reed* at ¶¶ 8, 13, 338 P.2d at 352, 353.

¶ 8 In *In re Tubbs*, 1980 OK 177, 620 P.2d 384, the Oklahoma Supreme Court reversed a trial court decision changing a child's name to that of a step-parent. Deciding the case on narrow procedural grounds, the Court held:

> Every divorced parent-custodial or not-whose paternal or maternal bond remains unsevered, has a cognizable claim to having his/her child continue to bear the very same legal name as that by which it was known at the time the marriage was dissolved. This ancient, valued and inseparable incident of the parental status, merits not an iota less protection of notice under due process than that which stands extended to the larger interest of a parent in preserving-intact and inviolate-the paternal or maternal bond as a whole. *Tubbs* at ¶ 9, 620 P.2d at 385.

It is generally recognized that a father has a protectible claim in the continued use by the child of the paternal surname in accordance with the usual custom, even though the mother may be the custodial parent. The paternal interest has been alluded to by various terms-a natural right, a fundamental right, a primary or time-honored right, a common-law right, a protectible interest and even a legal right. It has been protected by a variety of procedural devices. While the authorities ap-pear somewhat divided, the better view is that a non-custodial father whose paternal bond remains unsevered has a recognized interest in the child's continued use of his surname. *Tubbs* at ¶ 5, 620 P.2d at 386–87 (footnotes omitted).

It should be noted that the Court itself described the scope of its opinion:

> The question for decision is whether the decree changing a minor's name solely on publication service is void for want of personal notice to the father whose whereabouts were known or readily ascertainable and whose paternal rights remained unextinguished. We hold that because the notice given falls short of the minimum standards of due process the trial court should have vacated its decree. *Tubbs* at ¶ 1, 620 P.2d at 385.

> We need not and do not consider here the constitutional validity of § 1633. Nor do we declare that personal notice to some or any person is essential in every change-of-name proceeding. *Our pronouncement in this case is far more narrow. We merely hold that a decree changing a minor's surname without personal notice to a living non-custodial parent whose whereabouts are known or are readily ascertainable from available sources at hand and whose paternal or maternal bond remains unsevered falls short of compliance with the minimum standards of due process. Art. 2 § 7, Okl. Con.* (Emphasis added.) *Tubbs* at ¶ 7, 620 P.2d at 388.

■ ¶ 9 We note Father does not raise any issues regarding the timeliness or quality of his notice of the proceedings. While we agree Father's right to have his natural children bear his surname is a constitutionally protected right, that right is not absolute. It must be balanced by the best interest of the children.

> [t]he final determination herein must be on consideration of what, under all the circumstances, is best for the child, coupled with the rights of the parties as such rights refer to and have a direct bearing on the best interest of the child. *Reed* at ¶ 8, 338 P.2d at 352.

¶ 10 In *James v. Hopmann,* 1995 OK CIV APP 105, 907 P.2d 1098, another division of the Court of Civil Appeals upheld a trial court's decision to change a child's name from that of the natural mother to that of the natural father, who was not married to the natural mother, but was judicially determined to be the natural father. The trial court, applying 10 O.S.1991, § 90.4 [4] as the statutory basis for the name change, found the best interest of the child would be advanced by changing the name to that of the natural father, over the objection of the natural mother. The Court of Civil Appeals, using the abuse of discretion standard of review, held that the trial court's decision was not against the weight of the evidence, given that the child was surrounded by loving and supportive extended family on both sides. The court set out a list of factors that "should be considered by the trial judge" before changing a child's name under § 90.4, but declined to impose that list on the trial court, relying on the trial court's wide discretion as a finder of fact. *James* at ¶ 6, 907 P.2d at 1100.

■ ¶ 11 *In Re J.S.S.,* 1995 OK CIV APP 47, 895 P.2d 748, which relied on *Tubbs,* held that 12 O.S.1991, § 1631 (now 12 O.S.2001, § 1631):

does not permit a parent to change a minor child's last name from that of his natural father over the father's objection. This state has never permitted such a name change for the convenience of the mother when the paternal bond remains unsevered. *J.S.S.* at ¶ 2, 895 P.2d at 748.

We do not interpret *Tubbs* to completely forbid changing a minor's name over the objection of the natural father. Therefore we decline to fully adopt *J.S.S.'s* reasoning. We interpret *Tubbs* as defining the quality of the right involved, and also defining the quality of the notice and due process procedures that must be accorded the holder of that right before that right can be modified. In-

deed, *Tubbs* itself implicitly recognized that, under the proper circumstances, a name change over the objection of a non-custodial parent can occur:

*We merely hold that a decree changing a minor's surname without personal notice to a living non-custodial parent whose whereabouts are known or are readily ascertainable from available sources at hand and whose paternal or maternal bond remains unsevered falls short of compliance with the minimum standards of due process. Art. 2 § 7, Okl. Con. Tubbs,* at ¶ 7.

Thus, a court may change the name of a child from that of the natural father whose parental bond remains unsevered, even over his objection, as long as the natural father has been accorded the due process protections commensurate with the protected property interest now subjected to the exercise of judicial power. To so interpret § 1631 otherwise would require us to read a prohibition into § 1631 that does not exist.

■ ¶ 12 Section 1634 of the Oklahoma Change of Name Act states:

The material allegations of the petition shall be sustained by sworn evidence, and the prayer of the petition *shall* be granted *unless the court or judge finds that the change is sought for an illegal or fraudulent purpose,* or that a material allegation in the petition is false. (Emphasis added.)

From the foregoing text, it is obvious that had the legislature intended a name change to be contingent on the express permission of a parent whose parental rights remained unsevered, it would have so stated. Instead, the only statutory impediment to a name change is a finding that the change is for *an illegal or fraudulent purpose.* No such allegations are raised in this case. Parenthetically, we note §§ 1631 and 1634 have remained virtually unchanged since their enactment in 1953.

4. Now, 10 O.S.2001, § 90.4, this section states in part:

A. At any time after a determination of paternity, the mother, father, custodian or guardian of the child may file a motion requesting the court to order that the surname of the child be changed to the surname of its father....

B. If, after said hearing, the judge finds that it is in the best interest of the child to bear the paternal surname, the court shall enter an order to that effect....

¶ 13 Thus, while an argument can be made that a trial court has no discretion but to change the name of a minor child under § 1634, that section must be read in conjunction with the public policy concerns set out in *Tubbs*. As quoted above, the Oklahoma Supreme Court set out the extensive history and logic for keeping the parental bond between a child and a parent intact, which use of a natural father's surname supports.

¶ 14 We conclude that under these facts, the trial court erred in ordering the name change. In this connection, we find Father's argument that his surname, which is his birthright to his children, is perhaps the last tangible link to his family. This link should not be severed as a convenience to Children or to Wife. It should only be severed under the most compelling circumstances, which are not present here.

¶ 15 Father testified that since her remarriage, Mother engaged in a practice and pattern of interfering with Father's attempts to maintain a parental bond with Children. This was done, according to Father, through actions such as not returning phone calls, scheduling social engagements in conflict with Father's visitation schedule, and prohibiting Children's visits with the paternal grandparents. Father decided not to exacerbate the tense situation between him and Mother or jeopardize his already tenuous bond with Children, so he elected not to exercise any significant visitation until Children were older. Father testified he planned to reestablish contact with Children when they were older and he would not have to contend with Mother's interference. Further, Father's faithful payment of child support can be construed as evidence of his desire to maintain a parental relationship, as do his refusals to consent to the name change or adoption, even though to do so would be of financial benefit to him. These factors, taken as a whole, support Father's argument that he is trying to do what is best for his children in difficult circumstances. To sever the last remaining familial link between him and Children simply for their convenience is not in their best interest.

¶ 16 We are not unmindful that Children have elected to be known by a different name than Father's. However, that is a choice of convenience for them, and their legal surname remains that of Father, their choices notwithstanding. Upon reaching legal age, Children have options available to them, when neither parent is in a position to object.

¶ 17 REVERSED.

REIF, J., and RAPP, J., concur.